Linda **OVERALL** and Ivan Pajaazetovic,
Appellees,

v.

**STATE of Oklahoma ex rel. DE-
PARTMENT OF PUBLIC
SAFETY, Appellant.**

No. 83317.

Court of Appeals of Oklahoma,
Division No. 4.

Aug. 15, 1995.

Certiorari Denied Jan. 11, 1996.

Arthur R. South, Lawton, for Appellees.

Susan B. Loving, Attorney General, Wellon B. Poe, Assistant Attorney General, Oklahoma City, for Appellant.

## OPINION

GOODMAN, Presiding Judge.

This is an appeal from the Journal Entry of Judgment filed February 28, 1994, entering judgment on a jury verdict in favor of the plaintiffs on their claim seeking damages for the tort of false arrest by State employees. The State contends it is immune from liability pursuant to the Governmental Tort Claims Act, 51 O.S.1991 and Supp.1994 §§ 151 through 172 (GTCA), and therefore its earlier request for summary judgment was improperly denied by the trial court, and the subsequent adverse jury verdict was contrary to the law and the evidence.

■ On review of orders granting or denying motions for summary judgment, "this court will examine the pleadings and evidentiary materials, to determine what facts are material to [the] cause of action, and to determine whether the evidentiary materials introduced indicate whether there is a substantial controversy as to one material fact and that this fact is in the movant's favor." *Ross, By and Through Ross v. City of Shawnee*, 683 P.2d 535, 536 (Okla.1984).

■ We must review the Journal Entry of Judgment memorializing the jury's decision and determine if the jury's verdict was supported by any competent evidence or reasonable inferences to be drawn therefrom. *Bane v. Anderson, Bryant & Co.*, 786 P.2d 1230 (Okla.1989); *Silk v. Phillips Petroleum Co.*, 760 P.2d 174 (Okla.1988).

Based on the facts and law, we affirm both the entry of the trial court's order denying the State's motion for summary judgment, and the order entering judgment on the jury verdict.

## I

### Facts

The facts presented to the trial court in the State's motion for summary judgment are as follows.

Plaintiffs Linda Overall and Ivan Pajaazetovic (Overall and Pajaazetovic) alleged they were "falsely arrested and imprisoned" by Oklahoma Highway Patrol troopers and "were each falsely accused with 'failure to obey a lawful order' by said officers when, in fact, the officers knew or should have known that the same was not true."

Pajaazetovic participated in competitive drag races at the Faxon Speedway racetrack in Comanche County, Oklahoma, on September 15, 1990. He complained to the track operator about the unsafe condition of the drag strip surface and asked for his entry fee to be refunded. The operator refused and the two men argued, at which time the operator asked Pajaazetovic to leave the premises. He refused, and the operator called the Highway Patrol. Two troopers arrived and asked Pajaazetovic and Overall, his fiancee, to leave. Overall had not been involved in the argument with the track operator. The troopers' affidavits state they detected the odor of alcohol on Pajaazetovic, and believed

he had been drinking, but admitted they did not perform sobriety tests and did not arrest him at that time. They ordered Overall to drive Pajaazetovic home. The troopers' affidavits state they further ordered Pajaazetovic and Overall not to return to the track that evening, but to stay home. Pajaazetovic and Overall packed up their equipment and race car and left the track without incident. The troopers admitted that Overall had committed no offense in their presence, nor had anyone complained about Overall. Nevertheless, the troopers ordered her to leave the racetrack with Pajaazetovic. Despite the fact Overall was not involved in the argument between Pajaazetovic and the track operator in any way, other than being with Pajaazetovic, the troopers contend their reason for ordering Overall to leave the premises and not return was to prevent a riot or further disturbance. There was no evidence presented of a crowd, much less a hostile one, in support of the troopers' belief.

Pajaazetovic admits he was ordered off the track, and complied with that order. He strongly denied being ordered to stay home, or to stay off a public right-of-way by the troopers. He denied having any alcoholic drinks the entire day while racing. Pajaazetovic testified his race car was alcohol fueled.

Overall admitted being told to drive Pajaazetovic home, but denied she was told to stay home or even to stay away from the track. She also denies Pajaazetovic was intoxicated.

Because she was ordered to drive Pajaazetovic home in his car, Overall had to leave her car at the track. Two hours after getting home, Pajaazetovic and Overall, driven by a friend, returned to the track to get Overall's car. Pajaazetovic got out of the car at the gate, and never re-entered the track grounds. Overall entered the grounds to retrieve her car. After getting her car, Overall parked it by the side of the road, but off the track property. Pajaazetovic rejoined her, and there she and Pajaazetovic watched the rest of the drag races. The troopers returned,[1] and arrested the plaintiffs. Overall was arrested for failing to obey a lawful order, and was issued a citation for improper parking. The troopers searched and impounded her car.[2]

Pajaazetovic was arrested and charged with disobeying a lawful order and public drunkenness.[3] The troopers conducted neither field sobriety tests nor breathalyzer tests on Pajaazetovic before or after arresting him.

It is undisputed the troopers arrested the plaintiffs without a warrant.

The criminal charges against both plaintiffs were later either dismissed or tried to a jury, who acquitted both plaintiffs of all charges.

The plaintiffs filed suit against the State, alleging the arrests were knowingly false and without probable cause. The State filed a motion for summary judgment, claiming immunity under the GTCA. The motion was denied by the trial court. The case went to trial where the following additional facts were found.

Several witnesses testified at trial that Pajaazetovic was not drinking while drag racing, or at the time of his arrest. The State's witnesses testified there were signs posted which prohibited parking on the highway right-of-way next to the racetrack. The plaintiffs' witnesses testified that the signs were put into place one week after the plaintiffs had been arrested, but were not there at the time of the arrests. There was also testimony that Overall had parked her car off the road in the grass, but not on the shoulder or right-of-way.

The State claims—and the plaintiffs admit—the troopers were in the scope of their

---

**1.** It is unclear if the troopers were called back to the racetrack or merely returned on their own.

**2.** There is some evidence other vehicles were also parked on the grass next to the highway at the same time and in the same manner as Overall's. There is no evidence as to whether these vehicles were likewise impounded.

**3.** Pajaazetovic admitted to having a mixed drink at his house between his expulsion from the racetrack and his return to the track with Overall to retrieve her car. He denied being intoxicated.

employment with the State, and were acting in good faith when they made the arrests.

The jury resolved all fact issues in favor of the plaintiffs, and returned a verdict for Overall and Pajaazetovic, in the amount of $20,000 and $1 respectively.

## II

### *False arrest*

Our analysis of this case begins with an examination of the tort of false arrest.

Title 22 O.S.1991 § 196, states:

A peace officer may, without a warrant, arrest a person:

1. For a public offense, committed or attempted in his presence....

Title 22 O.S.1991 § 199, dictates:

When arresting a person without a warrant, the officer must inform him *of his authority and the cause of the arrest,* except when he is in actual commission of a public offense.... (Emphasis added.)

Title 76 O.S.1991 § 6, reads:

Besides the personal rights mentioned or recognized under law, every person has, subject to the qualifications and restrictions provided by law, the right of protection from bodily restraint or harm...."

False arrest is defined by Black's Law Dictionary 540 (5th ed. 1979) as:

unlawful restraint of an individual's personal liberty or freedom of locomotion.... An arrest without *proper legal authority* is a false arrest and because an arrest restrains the liberty of a person it is also false imprisonment. The gist of the tort is protection of the personal interest in freedom from restraint of movement. Neither ill will nor malice are elements of the tort, but if these elements are shown, punitive damages may be awarded in addition to compensatory or nominal damages. (Emphasis added.)

Title 21 O.S.1991 § 535, reads:

[Any] public officer or person pretending to be a public officer, *who under the pre-*

*tense or color of any process or other legal authority,* arrests any person, or detains him against his will, or seizes or levies upon any property, or dispossesses anyone of any lands or tenements *without due and legal process,* is guilty of a misdemeanor. (Emphasis added.)

 "Due and legal process" is another term for probable cause. An arrest, with or without a warrant, cannot be valid unless the officer has reason to believe a crime has been or is being committed, which is the probable cause required to effect a valid arrest. "Due and legal process" or probable cause to effect an arrest is not the same as the vested authority of the officer to make arrests. An officer may be duly authorized to make an arrest, but the arrest he makes is invalid if unsupported by probable cause. The authority vested in an officer to make an arrest does not automatically flow to the arrest itself and rehabilitate a tainted arrest. An officer acting as a duly authorized peace officer can carry out his duty in good faith by making a warrantless arrest, but unless there is probable cause to make that arrest, the arrest is invalid.[4]

 Thus, when the definitions set out above are read in connection with each other, we find that a good faith, warrantless arrest by an officer without due and legal process, *i.e.,* probable cause, is a false arrest. As such the arrest is tortious. The mental intent of the officer in making the arrest is irrelevant. There is no inference of bad faith, ill will, or malice to be drawn from the actions of the officer making the arrest. The simple fact the arrest was made without due and legal process, *i.e.,* probable cause, constitutes the tort of false arrest.

## III

### *Issues*

#### A. *Summary Judgment*

 We hold there were sufficient disputed issues of material fact to support the trial court's denial of the State's motion for sum-

---

**4.** There is a difference, of course, between an initial arrest made without probable cause, and a valid arrest which is later quashed due to viola-tions of constitutional rights committed in the course of the detention and arrest, which may also involve probable cause issues.

mary judgment. The plaintiffs have sufficiently pled and proven the elements of the tort of false arrest to submit the issue to a jury. Critical facts are disputed by each side and are clearly at issue. We now determine if, despite the factual disputes, there is some provision in the law which grants immunity to the State.

Title 51 O.S.1991 § 155, states in relevant part:

> The state or a political subdivision shall not be liable if a loss or claim results from:
>
> . . . .
>
> 4. Adoption or enforcement of or failure to adopt or enforce a law, whether valid or invalid, including, but not limited to, any statute, charter provision, ordinance, resolution, rule, regulation or written policy;
>
> . . . .
>
> 6. Civil disobedience, riot, insurrection or rebellion or the failure to provide, or the method of providing, police, law enforcement or fire protection. . . .

The State claims both these provisions defeat the plaintiffs' claims.

■ When reviewing statutory exemptions to liability, we will not read immunity into the exemption if it is silent, doubtful, or ambiguous when applied to the particular facts in question. *Gunn v. Consolidated Rural Water & Sewer Dist. No. 1*, 839 P.2d 1345, 1349 (Okla.1992); *Cooper v. Millwood Indep. School Dist. No. 37*, 887 P.2d 1370 (Okla.Ct.App.1994). Likewise, when interpreting a statute, we presume the legislature intended what it expressed in the statute, and we will follow the plain language accordingly. *Humphrey v. Denney*, 757 P.2d 833 (Okla.1988).

#### (1) Section 155(4) is not applicable

■ The plaintiffs claim the troopers arrested them without probable cause. They contend the troopers were not enforcing any law when they arrested them. They claim: the order to stay away from the racetrack, which later became the basis of their arrest, was in fact never issued; even assuming

arguendo that it was issued, the order had no basis in law; therefore being arrested for disobeying a non-existent or unlawful order constitutes the tort of false arrest. We agree.

■ We do not interpret § 155(4) to shield a State employee from liability for tortious acts, under these facts, even if those acts are done in the scope of employment. Had the arrest been made with probable cause, the State would be immune from liability for any damages claimed by the plaintiffs as a direct result of that lawful arrest. The fact the charges against the plaintiffs for which the arrests were made were later dropped, or the plaintiffs were later acquitted of those charges, would not retroactively make the initial arrests unlawful. The plaintiffs' claims are grounded on the allegation that the troopers knew the initial arrests were unlawful, *i.e.*, without probable cause, but arrested the plaintiffs anyway. Thus, an issue of disputed fact arises, which, when viewed in light of the applicable law, merits the submission of this issue to a jury. If there is a question of fact as to whether the initial arrests were false, and therefore tortious, § 155(4), by its very terms, does not apply.

#### (2) Section 155(6) is not applicable

■ There is no evidence that the plaintiffs' arrests resulted from any civil disobedience, riot, insurrection, or rebellion. Moreover, the plaintiffs do not contend their arrests are the result of any failure to provide police protection, or the method of providing police protection to the public.

#### (3) Good faith vs. probable cause

■ The State raises an issue about the relationship between "good faith" and "probable cause" when making an arrest. It is undisputed by the plaintiffs that the troopers were acting in good faith, and were thus within the scope of their employment.[5] Scope of employment under the GTCA, by definition, requires employees to act "in good

---

5. Indeed, they alleged so in their petition.

faith." [6] Thus, the State argues, if the troopers acted in good faith when they arrested the plaintiffs, they could not at the same time be liable for the tort of false arrest because that would imply the troopers were acting in bad faith. The State argues the requirement of "probable cause" before making a warrantless arrest is no longer necessary. The State contends that, because an employee must be acting in good faith in order for the arrest to have been made, "the requirement of a valid arrest (meaning a presence of probable cause) . . . gives way to the minimal subjective requirement of 'good faith' on the part of an arresting officer." In other words, "[t]herefore, a determination of 'good faith,' and not probable cause or validity of an arrest, is now the proper test for deciding whether the State of Oklahoma can and should be held liable for Plaintiffs' alleged injuries." We take the State's argument to mean that an arrest, made without probable cause, is automatically one made in bad faith. Therefore the subject troopers, because they were acting in good faith, were not required to base the arrest on probable cause.

We hold the State's position to be a misinterpretation of the law. As discussed earlier in this opinion, the troopers were undisputedly acting in good faith when they exercised their right to make an arrest. Where the officers ran afoul, however, was not in the performance of their duty as arresting officers, but in the arrest itself. An arrest made without probable cause is a false one, despite the fact it was made by an officer acting in good faith in the performance of his duty.

■ The "good faith" requirement defines whether the troopers were in the scope of employment—and thus whether the State is liable for their actions—not whether they had probable cause to make an arrest. An officer's good faith is not, and never has been, a substitute for probable cause to make a warrantless misdemeanor arrest. *Castellano v. State*, 585 P.2d 361 (Okla.Crim.1978); *Tomlin v. State*, 869 P.2d 334 (Okla.Crim. 1994). Because we have determined the tort of false arrest does not require proof of malice or ill will, the issue of whether or not

the troopers were acting in good faith is irrelevant. The plaintiffs must only prove that the troopers had no probable cause to make a warrantless misdemeanor arrest. The jury resolved all fact issues in favor of the plaintiffs, and we thus hold the troopers, though acting in good faith and within the scope of their employment, had no probable cause to arrest the plaintiffs, and thus committed the tort of false arrest. Because the plaintiffs never disputed the troopers were acting in good faith within the scope of their employment, the GTCA imposes liability on the State. *See Roberts v. City of Stillwater*, 646 P.2d 6 (Okla.Ct.App.1982).

The lack of a mental element of the tort of false arrest is what distinguishes this case from the facts in *Parker v. City of Midwest City*, 850 P.2d 1065 (Okla.1993). In *Parker*, the court held the GTCA shields a city from liability from a suit for malicious prosecution following an arrest. Because the tort of malicious prosecution implies malice, the city, through an officer or prosecutor acting in the scope of employment, and by extension, in good faith, cannot be held liable for that tort because the employee cannot be acting in good faith and be possessed of malice at the same time. In contrast, the instant case raises no issue of malice or ill will on the part of the State's employees.

The trial court correctly denied the State's requested summary judgement, and allowed the case to proceed to trial.

*B. The State is not immune from trial.*

The State's claim that it is immune from a jury trial is without merit for the reasons set out above.

*C. The verdict is not contrary
to the evidence.*

■ We find there was sufficient competent evidence before the jury, as discussed above, to support the verdict. *Bane v. Anderson, Bryant & Co., supra; Silk v. Phillips Petroleum Co., supra.* The jury resolved all issues of fact in favor of the plain-

---

6. Title 51 O.S.1991 § 152(9), provides: " 'Scope of employment' means performance by an employee acting in good faith within the duties of his office or employment. . . . "

tiffs, and we find ample support in the record for such a finding.

The entry of the Journal Entry of Judgment is therefore affirmed.

RAPP, V.C.J., and STUBBLEFIELD, J., concur.