**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 15, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

JASON WAYNE COURTNEY,

        Plaintiff - Appellant,

v.

No. 12-7028

STATE OF OKLAHOMA, ex rel.,
DEPARTMENT OF PUBLIC SAFETY;
JACOB SMITH, Oklahoma Highway
Patrol Trooper, in his individual capacity,

        Defendants - Appellees.

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**
**(D.C. NO. 6:11-CV-00280-RAW)**

David R. Keesling (Timothy S. Kittle with him on the briefs), Richardson
Richardson Boudreaux Keesling, Tulsa, Oklahoma, for Plaintiff-Appellant.

Devan A. Pederson, Assistant Attorney General (Kevin L. McClure, Assistant
Attorney General, with him on the brief), Oklahoma Attorney General's Office,
Litigation Division, Oklahoma City, Oklahoma, for Defendants-Appellees.

Before **KELLY**, **MURPHY**, and **TYMKOVICH**, Circuit Judges.

**MURPHY**, Circuit Judge.

## I.   Introduction

Plaintiff Jason Wayne Courtney appeals the district court's grant of summary judgment to Defendants in his action brought under 42 U.S.C. § 1983 against Trooper Jacob Smith and the State of Oklahoma *ex rel* the Oklahoma Department of Public Safety (the "State").  Courtney's claims arise from a traffic stop on the Muskogee Turnpike during which he was arrested for being a felon in possession of a firearm in violation of Oklahoma law.  *See* Okla. Stat. tit. 21 § 1283(A).  Courtney alleges Smith violated his constitutional rights by unreasonably extending the scope of the traffic stop and arresting him without probable cause.  Courtney also asserts state-law causes of action against the State for false arrest and imprisonment, assault and battery, and conversion.  The district court granted the Defendants' motions for summary judgment, concluding Smith was entitled to qualified immunity and the State was immune from liability under the Oklahoma Governmental Tort Claims Act.  *See* Okla. Stat. tit. 51 § 155(4).  Exercising jurisdiction pursuant to 28 U.S.C. § 1291, this court **affirms** in part and **reverses** in part.

## II.   Background

The underlying material facts are undisputed.  On October 25, 2010, at approximately 1:30 a.m., Smith observed Courtney's vehicle traveling on the Muskogee Turnpike at eighty-two miles per hour.  The posted speed limit was seventy-five miles per hour.  Further, Courtney did not dim his headlights as he

passed Smith's patrol car. Smith initiated a traffic stop. Courtney did not stop immediately, but continued through a traffic light and pulled into an open, well-lighted gas station, stopping only after Smith briefly sounded his siren.

After Courtney came to a complete stop, Smith approached Courtney's vehicle and instructed Courtney to exit and take a seat in the front of the patrol car. Smith explained to Courtney he was stopped for speeding and failure to dim and that he would be issued a warning. While preparing a written warning, Smith asked Courtney questions about his travel plans. Courtney stated he was driving from his home in Tennessee to work in Tulsa after spending the weekend with his family. He further stated Tulsa was the only place he could find work, and that he returned to Tennessee about every three weeks to visit his family. During this discussion, Smith observed what he believed to be signs of extreme nervousness, including Courtney's heart beating through his shirt; his carotid artery visibly pulsing; heavy breathing; continuous yawning; nervous laughter; and shaky, sweaty hands. Smith became suspicious Courtney was engaged in criminal activity. He nonetheless returned Courtney's license and paperwork to him and wished him a safe trip.

As Courtney was returning to his vehicle, Smith asked him if he would be willing to answer a few more questions. Courtney declined. Smith then ordered Courtney to stop and return to the patrol car. Smith explained to Courtney that he was suspicious of criminal activity and asked him if he had any illegal drugs,

-3-

large amounts of cash, or firearms in the vehicle. Courtney told Smith he had a gun in the trunk. Smith called for another unit and had a police canine sniff Courtney's vehicle for drugs. The dog did not alert.

While the dog sniff was in progress, Smith requested Courtney's criminal record. A report was sent to Smith's patrol vehicle via the Interstate Identification Index ("Triple I"). The report included an entry indicating Courtney had been adjudicated guilty of felony breaking and entering in probate court in Alpena County, Michigan on May 5, 1998. Further, the report indicated the charge was disposed of through a "juv adjudication." Smith showed the screen to Courtney, but Courtney did not recall any felony conviction and stated he did not have a felony on his record. Smith was aware at the time that the offense occurred more than twelve years prior and that Courtney would have been under eighteen years of age when it occurred. Despite initially expressing hesitation to other officers, Smith ultimately arrested Courtney for possession of a firearm after former conviction of a felony, in violation of Okla. Stat tit. 21 § 1283(A).

Courtney was held for thirty-six hours at the Muskogee County Jail. His vehicle and gun were seized pursuant to the arrest. On October 26, 2010, Courtney's attorney contacted the Muskogee County District Attorney's office and informed the district attorney that Courtney did not have a felony conviction on his record. The district attorney ordered that Courtney be released; no charges

-4-

were filed. Upon his release, Courtney was able to retrieve his vehicle after payment of the impound fees. Smith, however, did not turn the gun in to the Muskogee County Sheriff's office until November 9, 2010. On November 12, 2010, Courtney's attorney sent the State a notice under the Oklahoma Governmental Tort Claims Act, Okla. Stat. tit. 51 § 156, stating, *inter alia*, that the gun had not yet been returned. The gun was not returned to Courtney until October 13, 2011, almost one year after it was seized.

Courtney brought suit against Smith and the State. Courtney asserted claims against Smith under 42 U.S.C. § 1983, alleging in two separate counts he was subjected to the unconstitutional seizure of his person and property, in violation of the Fourth, Fifth, and Fourteenth Amendments. Courtney asserted state-law claims against the State for false arrest and imprisonment, assault and battery, and conversion. The district court granted summary judgment to the Defendants on all of Courtney's claims. Regarding Courtney's § 1983 claims, the court concluded Smith was entitled to qualified immunity. Further, applying *Overall v. State ex rel. Department of Public Safety*, 910 P.2d 1087, 1092 (Okla. Civ. App. 1995), the court concluded the State was immune from Courtney's state-law claims under the Oklahoma Governmental Tort Claims Act.

## III.  Discussion

### A.    Standard of Review

This court reviews a grant of summary judgment de novo, applying the same legal standard as the district court.  *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013).  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "This court reviews summary judgments based on qualified immunity differently than other summary judgments.  When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established."  *Becker*, 709 F.3d at 1022 (quotation omitted).  In determining whether a right is clearly established, "[t]he relevant, dispositive inquiry is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Saucier v. Katz*, 533 U.S. 194, 202 (2001), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate."  *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011).  This court maintains the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Pearson*, 555 U.S. at 236.

-6-

B.    Constitutional Claims

Courtney's § 1983 challenge to the seizure of his person has two components.  First, he alleges Smith lacked reasonable suspicion to detain him beyond the time necessary to issue the traffic warning.  Second, he alleges Smith lacked probable cause to arrest him.  As a preliminary matter, however, we first address Smith's argument that because he could have arrested Courtney for speeding and failing to dim his headlights, the extended detention and ultimate arrest did not violate Courtney's constitutional rights.  Relying primarily on three Supreme Court cases, *Virginia v. Moore*, 553 U.S. 164 (2008), *Devenpeck v. Alford*, 543 U.S. 146 (2004), and *Atwater v. City of Lago Vista*, 532 U.S. 318 (2001), Smith argues that when a traffic stop is supported by probable cause that a motorist has committed even a minor traffic offense, it is impossible for the subsequent stop to be unreasonably extended because the officer could arrest the motorist for the traffic offense.  At minimum, Smith argues that any violation of Courtney's constitutional rights was not clearly established because *Moore*, *Devenpeck*, and *Atwater* inject sufficient uncertainty into the law of traffic stops. *See Reichle v. Howards*, 132 S. Ct. 2088, 2095–96 (2012) (discussing Supreme Court authority which had "injected uncertainty" into clearly established law in the qualified immunity context).  Smith's reading of *Moore*, *Devenpeck*, and *Atwater* is flawed.

In *Atwater*, the Court held an officer may constitutionally arrest an offender for minor traffic offenses, such as failure to wear a seatbelt. 532 U.S. at 354 ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."). In *Moore*, the Court clarified that an arrest is constitutional even if, under state law, the officer should have issued a summons instead of arresting the offender. 553 U.S. at 176. ("[W]arrantless arrests for crimes committed in the presence of an arresting officer are reasonable under the Constitution, and . . . state restrictions do not alter the Fourth Amendment's protections."). Finally, in *Devenpeck*, the Court rejected the argument that an officer's stated reason for arresting an offender must be "closely related" to the offense for which there is probable cause to arrest. 543 U.S. at 153 ("[A]n arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause. That is to say, his subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." (citations omitted)). Even taken together, these cases do not support the conclusion that an officer, after issuing a warning citation for a traffic violation, may continue to detain a driver indefinitely and then arrest the driver for a different offense without probable cause.

To the contrary, Smith's interpretation of *Atwater* and *Devenpeck* is inconsistent with subsequent Supreme Court and Tenth Circuit authority on the

lawful scope of traffic stops. In *Illinois v. Caballes*, 543 U.S. 405, 406 (2005), state troopers stopped a defendant traveling along an interstate highway for speeding. After first acknowledging the validity of the initial stop, the Court proceeded to analyze whether the stop was unreasonably extended:

> Here, the initial seizure of respondent when he was stopped on the highway was based on probable cause and was concededly lawful. It is nevertheless clear that a seizure that is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution. *A seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission.*

*Id.* at 407 (citation omitted) (emphasis added). This court's cases have followed suit, analyzing whether traffic stops which were valid at their inception remain so throughout the encounter. *See, e.g.*, *United States v. Davis*, 636 F.3d 1281, 1290 (10th Cir. 2011); *United States v. Villa*, 589 F.3d 1334, 1339 (10th Cir. 2009); *United States v. Alcaraz-Arellano*, 441 F.3d 1252, 1258 (10th Cir. 2006). We therefore reject Smith's argument that Courtney's traffic violations obviated the need for additional justification to prolong the stop after the issuance of a warning citation or otherwise excuse Smith for arresting Courtney on another basis without probable cause.

1.    Extended Detention

Courtney argues his detention in Smith's patrol car following the issuance of a warning ticket for the traffic violations constituted an unreasonable seizure in

violation of the Fourth Amendment. "In addition to being justified at its inception, a lawful traffic stop must be reasonably related in scope to the circumstances which justified the interference in the first place." *United States v. Lyons*, 510 F.3d 1225, 1236 (10th Cir. 2007) (quotation omitted); *see also Caballes*, 543 U.S. at 407. "Therefore, once an officer returns the driver's license and vehicle registration and issues a warning ticket, he must allow the driver to proceed without further detention or questioning unless the officer has an objectively reasonable and articulable suspicion that the driver is engaged in illegal activity." *Lyons*, 510 F.3d at 1237.[1]

To determine whether reasonable suspicion exists, "we look to the totality of the circumstances to see whether the officer had a particularized and objective basis for suspecting legal wrongdoing." *Id.* (quotation omitted). "Reasonable suspicion is something more than an inchoate and unparticularized suspicion or hunch, but is considerably less than proof by a preponderance of the evidence or proof required for probable cause." *United States v. De La Cruz*, 703 F.3d 1193, 1196 (10th Cir. 2013) (quotations and alteration omitted). In the context of Courtney's § 1983 claim and Smith's defense of qualified immunity, the scope of our analysis is limited even further: the issue is not simply whether reasonable

---

[1]The traffic stop may also be extended if the driver consents to additional questioning. *United States v. Lyons*, 510 F.3d 1225, 1237 n.7 (10th Cir. 2007). Here, however, Courtney expressly refused such consent. *See supra* Part II.

suspicion existed, but whether it was clearly established that reasonable suspicion did not exist. The inquiry thus focuses on whether it would have been clear to a reasonable officer in Smith's position that he lacked lawful authority to extend the stop. *Pearson*, 555 U.S. at 236.

The district court identified three bases for Smith's suspicion of criminal activity: (1) Courtney did not stop immediately after Smith activated his lights, but instead proceeded through a traffic light and into a gas station; (2) Smith observed signs of extreme nervousness throughout the stop, even after advising Courtney he would only be receiving a warning; and (3) Courtney's stated travel plans. Regarding the first of these factors, Courtney argues his decision to proceed to a gas station was done for his own safety. While this explanation is entirely reasonable, it was also reasonable for Smith to interpret the action as potentially indicative of criminal activity. *See Lyons*, 510 F.3d at 1237 ("We give deference to an officer's ability to distinguish between innocent and suspicious actions." (quotation omitted)). Thus, Courtney's delay in coming to a stop supports the conclusion reasonable suspicion existed to extend the stop.

As for the second factor, this court has consistently held that ordinary nervousness is not entitled to significant weight when determining whether reasonable suspicion exists. *United States v. Simpson*, 609 F.3d 1140, 1147 (10th Cir. 2010). "Extreme and persistent nervousness, however, is entitled to somewhat more weight." *Id.* at 1148 (quotation omitted). Here, Smith articulated

-11-

multiple indicia of Courtney's extreme nervousness during the stop: visible heart palpitations; heavy breathing; nervous laughter; repeated yawning; and shaky, sweaty hands. *See id.* ("The court examines specific indicia that the defendant's nervousness was extreme, rather than credit an officer's naked assertion."). Moreover, Smith observed that Courtney's nervousness did not dissipate after he was informed he would only be receiving a warning for the traffic violation. This observation is consistent with extreme nervousness. *Id.* Thus, the second factor also supports the conclusion reasonable suspicion existed at the time of the stop.

As for the third factor, this court recently discussed the evaluation of a motorist's stated travel plans in a reasonable suspicion analysis:

> We have credited inconsistent travel plans as a factor contributing to reasonable suspicion when there are lies or inconsistencies in the detainee's description of them. For example, a police officer could reasonably believe a travel plan was implausible—and the person was lying—if that person claimed that he or she had left a certain city by car an hour ago if the officer pulled over that person, 200 miles from the city. To this extent, the factor seems noncontroversial: lies, evasions or inconsistencies about any subject while being detained may contribute to reasonable suspicion. In contrast, this circuit has been reluctant to deem travel plans implausible—and hence a factor supporting reasonable suspicion—where the plan is simply unusual or strange because it indicates a choice that the typical person, or the officer, would not make.

*Id.* at 1148–49. Here, Courtney's assertion that he was traveling from one state to another state for work after visiting his family for the weekend was not accompanied by any lies, evasions, or inconsistencies. Indeed, his stated plans

-12-

were wholly unremarkable.  Thus, Courtney's stated travel plans do not support the conclusion that reasonable suspicion existed.[2]

In sum, two of the three factors identified by the district court—Courtney's delay in coming to a stop after Smith activated his lights and the extreme nervousness Courtney exhibited throughout the stop—support an inference of reasonable suspicion.  The third—Courtney's stated travel plans—does not.  The factors supporting reasonable suspicion are quite thin.  However, it is at least debatable whether reasonable suspicion existed.  As such, Courtney has not shown his extended detention was a violation of clearly established law.  *al-Kidd*, 131 S. Ct. at 2083.[3]  The district court therefore did not err in concluding Smith

---

[2]While the inquiry into whether reasonable suspicion exists is an objective one, *Lyons*, 510 F.3d at 1236, we note that Smith made no mention of suspicious travel plans in his probable cause affidavit filed after the arrest.  Moreover, at the time of the stop Smith indicated to other officers on the scene that he believed Courtney was being truthful about his travel plans.  Under these circumstances, the deference this court normally affords to an officer's judgments as to whether certain activity is innocent or suspicious, *id.* at 1237, is considerably diminished.

[3]Courtney also argues the district court's reasonable suspicion analysis erroneously relied on factors observed before Smith returned his license and registration and attempted, unsuccessfully, to secure his consent.  While this court has held that, after the return of a driver's documentation, continued detention of a motorist is impermissible absent consent or reasonable suspicion, we have expressly rejected the proposition that an officer cannot rely on facts observed prior to that point in formulating reasonable suspicion.  *United States v. Williams*, 271 F.3d 1262, 1271 (10th Cir. 2001); *see also Lyons*, 510 F.3d at 1237 (considering facts observed prior to the return of a motorist's license and registration in analyzing whether reasonable suspicion justified continued detention.).

was entitled to qualified immunity on Courtney's claim that the traffic stop was unreasonably prolonged.

### 2. Warrantless Arrest

Consistent with the Fourth Amendment, an officer may make a warrantless arrest if there is probable cause to believe a criminal offense has been or is being committed. *Devenpeck*, 543 U.S. at 152. "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Id.* Further, an officer's subjective motivations for making an arrest are irrelevant in a probable cause inquiry. *Id.* ("[A]n arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause."). The district court concluded Courtney's arrest was supported by probable cause that Courtney violated Oklahoma's felon-in-possession statute, Okla. Stat. tit. 21 § 1283, or, in the alternative, Oklahoma's obstruction of justice statute, Okla. Stat. tit. 21 § 540. We consider these justifications in turn.

Oklahoma's felon-in-possession statute provides, in relevant part:

A. . . . [I]t shall be unlawful for any person convicted of any felony in any court of this state or of another state or of the United States to have in his or her possession or under his or her immediate control, or in any vehicle which the person is operating, or in which the person is riding as a passenger, or at the residence where the convicted person resides, any pistol, imitation or homemade pistol, altered air or toy pistol, machine gun, sawed-off shotgun or rifle, or any other dangerous or deadly firearm.

-14-

. . . .

> D.  It shall be unlawful for any person previously adjudicated as a delinquent child or a youthful offender for the commission of an offense, which would have constituted a felony offense if committed by an adult, to have in the possession of the person or under the immediate control of the person, or have in any vehicle which he or she is driving or in which the person is riding as a passenger, or at the residence of the person, any pistol, imitation or homemade pistol, altered air or toy pistol, machine gun, sawed-off shotgun or rifle, or any other dangerous or deadly firearm within ten (10) years after such adjudication . . . .

Okla. Stat. tit. 21 § 1283.  Thus, while Oklahoma law prohibits the possession of firearms by a person previously convicted of a felony, a juvenile adjudication over ten years old does not qualify as an underlying felony.  At the time Smith arrested Courtney, he knew the breaking and entering entry on the Triple I report referred to an incident that occurred when Courtney was a minor and that it was over ten years old.  The Triple I report also indicated the charge was brought by petition in probate court and, most importantly, that the charge was disposed of as a juvenile adjudication.  In concluding Smith had probable cause to arrest Courtney, the district court reasoned that "juvenile offenses are generally sealed and not listed on a national database. . . . Smith could have reasonably concluded that because the felony was listed on the national database, Plaintiff was charged as an adult and that the offense, therefore, was not a 'juvenile offense' within the meaning of the statute."  Order at 11.  There is no support in the record for the district court's statement in this regard, nor does Smith point to any such support

on appeal. To the contrary, Department of Justice regulations governing the Triple-I system provide that "[c]riminal history record information maintained in the [Triple-I] System . . . shall include serious and/or significant adult *and juvenile* offenses." 28 C.F.R. § 20.32(a) (emphasis added). Further, the district court's analysis ignores the information available to Smith on the Triple-I report, which plainly indicates the prior breaking and entering charge was a juvenile adjudication. Therefore, given the facts known to him at the time of the arrest, Smith lacked probable cause to arrest Courtney for possession of a firearm by a convicted felon.

Alternatively, the district court concluded Smith was entitled to qualified immunity on Courtney's claim of unlawful arrest because he did not violate clearly established law. In so doing, the court characterized Smith's decision to arrest Courtney as, at worst, a mistaken legal conclusion regarding the scope of the felon-in-possession statute. Because qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions," *al-Kidd*, 131 S. Ct. at 2085, the court concluded any such mistake did not vitiate Smith's claim to qualified immunity. This conclusion, too, was error. Oklahoma's felon-in-possession statute is not ambiguous. Persons convicted of a felony as an adult are prohibited from possessing firearms. Okla. Stat. tit. 21 § 1283(A). Persons adjudicated delinquent on similar charges as a juvenile are only prohibited from possessing firearms for ten years. *Id.*

-16-

§ 1283(D). The information available to Smith at the time of the arrest made clear Courtney was in the latter category. It was therefore clearly established that Smith lacked probable cause to arrest Courtney for violation of the felon-in-possession statute.

The district court also concluded Smith had probable cause to arrest Courtney for obstruction of justice. Okla Stat. tit. 21 § 540 provides: "Every person who willfully delays or obstructs any public officer in the discharge or attempt to discharge any duty of his office, is guilty of a misdemeanor." Thus, under Oklahoma law, to be guilty of obstruction, a defendant must (1) willfully; (2) delay/obstruct; (3) a public officer; (4) known by the defendant to be a public officer; (5) in the discharge of any duty of his office. Okla. Uniform Jury Instructions, Crim.2d, § 6-48 (2012). A suspect who willfully gives false statements to the police which impede an investigation is guilty of obstruction under Oklahoma law. *Marsh v. State*, 761 P.2d 915, 916–17 (Okla. Crim. App. 1988). The district court concluded Smith had probable cause to arrest Courtney for obstruction because Courtney denied having a felony on his record and stated he had never been arrested for breaking and entering. This conclusion is not supported by the record. As the video of the traffic stop makes clear, while Courtney initially denied having ever been arrested for burglary, as Smith shared details from the Triple I report, Courtney clarified he simply did not remember any such arrest or conviction. Further, when shown the information on the Triple

-17-

I report, Courtney acknowledged it referred to him, and clarified that he simply did not remember the event. Thus, there is no evidence Courtney's statements impeded Smith's investigation or altered its course in any way. *Cf. id.* at 916 ("In his argument on appeal, the appellant admits that the false statement given to the police 'impeded' the investigation."). The district court therefore erred in concluding probable cause existed to arrest Courtney for obstruction.

## C. State-Law Claims

The district court granted summary judgment to the State on Courtney's claims for false arrest and imprisonment, assault and battery, and conversion based on the Oklahoma Governmental Tort Claims Act., Okla. Stat. tit. 51 § 155(4)[4], which provides: "The state . . . shall not be liable if a loss or claim results from: . . . [a]doption or enforcement of or failure to adopt or enforce a law, whether valid or invalid, including, but not limited to, any statute, charter provision, ordinance, resolution, rule, regulation or written policy." The statute immunizes the State for claims of false arrest or imprisonment for arrests made with probable cause. *Overall v. State ex rel. Dep't of Pub. Safety*, 910 P.2d 1087, 1092 (Okla. Civ. App. 1995). Having rejected the district court's conclusion that

_____

[4]Recently, the Oklahoma Supreme Court held unconstitutional and declared void a bill which amended provisions of Okla. Stat. tit. 51 § 155. *See Douglas v. Cox Ret. Props.*, 2013 WL 2407169, at * 3 (Okla. 2013). Okla. Stat. tit. 51 § 155(4) was unaffected by either the bill or the subsequent decision of the Oklahoma Supreme Court. *See* H.B. 1603, 52d Leg., 1st Reg. Sess. (Okla. 2009).

Smith had probable cause to arrest Courtney, we necessarily reject its corollary

conclusion that the State is entitled to governmental immunity. As an alternative

ground for affirmance,[5] the State argues that even if Smith lacked probable cause

to arrest Courtney, it is still entitled to immunity under § 155(4) because Smith

was attempting to enforce a law when he made the arrest. This argument lacks

foundation in Oklahoma law. In *Overall*, the State argued it was immune from

liability under § 155(4) for a claim of false arrest because, even if the arresting

officers lacked probable cause, the arrest was made in good faith. *Id.* at 1092–93.

The court rejected this argument:

> We hold the State's position to be a misinterpretation of the law. . . .
> [T]he troopers were undisputedly acting in good faith when they
> exercised their right to make an arrest. Where the officers ran afoul,
> however, was not in the performance of their duty as arresting
> officers, but in the arrest itself. *An arrest made without probable
> cause is a false one, despite the fact it was made by an officer acting
> in good faith in the performance of his duty.*

*Id.* at 1093 (emphasis added). The State's argument before this court is nearly

identical to that rejected in *Overall*. We therefore conclude the State is not

entitled to governmental immunity from Courtney's claim of false arrest and

imprisonment.[6]

---

[5]It is well established that this court "may affirm for any reason supported by the record, but not relied on by the district court." *Brady v. UBS Fin. Servs., Inc.*, 538 F.3d 1319, 1327 (10th Cir. 2008).

[6]In support of its assertion that § 155(4) immunizes it from liability regardless of whether Smith had probable cause to make the arrest, the State

(continued...)

Regarding Courtney's claim for conversion, even if the district court was correct in concluding Smith had probable cause to make the arrest, § 155(4) would not necessarily bar Courtney's claim for conversion. Under Oklahoma law, "[c]onversion is any act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." *Welty v. Martinaire of Okla., Inc.*, 867 P.2d 1273, 1275 (Okla. 1994). The undisputed material facts in the present case indicate that, even after Courtney had been released from jail and it had been determined it was not illegal for him to possess a firearm, the State retained possession of his pistol for almost one year. The district court therefore erred in granting summary judgment on Courtney's conversion claim.

Finally, as to Courtney's assault and battery claim, Courtney alleges he was subjected to offensive physical contact without his consent in the course of his arrest and confinement. Under Oklahoma law, a battery occurs when the defendant acts with the intent of making a harmful or offensive contact with the person of the plaintiff and the act results in a harmful or offensive contact. *See*

---

[6](...continued)
relies on *Turner v. Klika*, No. 07-CV-268, 2011 WL 4538423 (W.D. Okla. Sept. 29, 2011) (unpublished), *Morales v. City of Oklahoma City ex rel. Oklahoma City Police Department*, 230 P.3d 869 (Okla. 2010), and *Williams v. City of Warr Acres*, 695 P.2d 519 (Okla. 1985). None of these authorities, however, involved an allegation of arrest made without probable cause. *See Turner*, 2011 WL 4538423, at *1; *Morales*, 230 P.3d at 873, 876; *Williams*, 695 P.2d at 520–21.

Okla. Uniform Jury Instruction, Civ.2d, § 19.6 (2012).[7]  In response, the State

relies on Okla. Stat. tit. 51 § 155(16) and Okla. Stat. tit. 21 § 643(1).  Okla. Stat.

tit. 51 § 155(16) provides: "The state . . . shall not be liable if a loss or claim

results from . . . [a]ny claim which is limited or barred by any other law."  Okla.

Stat. tit. 21 § 643(1) provides: "To use or to attempt to offer to use force or

violence upon or toward the person of another is not unlawful . . . [w]hen

necessarily committed by a public officer in the performance of any legal duty."

The Oklahoma Supreme Court, however, has held that § 643 cannot be used in

conjunction with § 155(16) to immunize a government agency from suit based on

the conduct of its employees.  *Morales v. City of Okla. City ex rel. Okla. City

Police Dep't*, 230 P.3d 869, 877 (Okla. 2010) ("We reject City's argument that

§ 643, in conjunction with § 155(16), renders City immune from suit. . . . Instead,

we interpret § 155(16) to bar suit against a governmental employer only if, and to

the extent that, a law outside the [Act] *would prevent a suit from being brought

against the employee-tortfeasor*." (emphasis added)).  We therefore decline to

affirm the district court's grant of summary judgment on Courtney's assault and

battery claim on the alternate grounds proposed by the State.

---

[7]Every battery necessarily includes an assault.  *Hall v. State*, 309 P.2d
1096, 1100 (Okla. Crim. App. 1957).

## IV.    Conclusion

For the foregoing reasons, the district court's order granting summary judgment to Smith and the State is **affirmed** in part, and **reversed** in part.  The district court's grant of qualified immunity to Smith as to Courtney's claims related to the extension of the traffic stop is **affirmed**.  The district court's grant of qualified immunity to Smith as to Courtney's claims of unlawful arrest without probable cause is **reversed**.  The district court's grant of summary judgment to the State on Courtney's claims for false arrest, conversion, and assault and battery is **reversed**, and the case is **remanded** to the district court for further proceedings not inconsistent with this opinion.