HOLLOWAY, Circuit Judge,
dissenting:
It is clear, in my view, that there was no probable cause for Officer Yazzie to file a criminal complaint against Mr. Panagoula-kos, the Plaintiff, after Officer Yazzie had reviewed the protective order which she quite mistakenly believed provided such probable cause.[1] The majority’s holding that the officer is entitled to qualified immunity for her mistake of law is contrary to our precedents, most notably Courtney v. Oklahoma, 722 F.3d 1216, 1223 (10th Cir.2013). Accordingly, I respectfully dissent.
Our Constitution protects against unreasonable seizures of our persons. An arrest is valid if the arresting officer has probable cause to believe that a crime has been committed. In the absence of probable cause, detention is not permitted except for a reasonably brief period allowed for investigation when an officer has reasonable suspicion that an offense has been committed. See, e.g., United States v. Botero-Ospina, 71 F.3d 783, 786 (10th Cir.1995) (en banc). Moreover, it is inherent in the nature of investigative detentions that officers will learn additional information, information which either may bolster or may weaken the basis for the officer’s suspicion that an offense has been committed. And our precedents show that an officer must be held liable when she extends the detention, or escalates the detention to an arrest, when a reasonable officer would have realized that the basis for the deten *1132 tion has been thoroughly discredited by the newly acquired information.
In this case there is no dispute that Plaintiffs initial detention for investigation of an apparent traffic violation was lawful. As Plaintiff now concedes, his initial arrest was also lawful as the information available to the officers at the scene of the traffic stop supplied the requisite probable cause for arrest. Thus, the first two events in this sequence are quite unremarkable, both legally and factually.
This case took an unusual turn, however. Defendant Yazzie was tasked with taking Plaintiff to the police station and with examining the protective order to see if Plaintiff was in violation of the law for being in possession of a firearm. It is undisputed that the order did not forbid Plaintiff from possessing a firearm. Defendant Yazzie, however, did not know the law and erroneously believed that all persons subject to protective orders are forbidden from possessing firearms. Finding no affirmative statement in the protective order to authorize Plaintiffs firearm possession, Defendant Yazzie did not merely fail to release Plaintiff, she took affirmative steps to insure his continued detention, which led directly to his being held in jail for eleven days on the completely invalid charge of violation of a protective order by possession of a firearm. The majority duly notes this act by Officer Yazzie, but its analysis completely ignores it.
Officer Yazzie was responsible not just for “sins of omission,” but for a “sin of commission.” These terms, drawn from religion and steeped in overtones of morality, are useful, I think, even though not precisely applicable. As the majority notes, Officer Yazzie took a very significant, positive step to extend Mr. Panagou-lakos’s detention: “She then prepared a criminal complaint and had Panagoulakos detained.” (Maj. op. at 1128.) Yet the majority’s analysis is based entirely on the notion that the officer is being called to answer only for failing to release Mr. Pan-agoulakos. The majority enters the zone of speculation when it posits that Mr. Pan-agoulakos might have been detained for eleven days even if Officer Yazzie knew the law and realized that there was no probable cause for believing that he had committed the offense of possessing a firearm in violation of a protective order. I am disturbed by the majority’s placid acceptance of this speculative proposition which is so squarely at odds with our Constitution.
In any event, our cases do not support this way of defining the issue in cases of wrongful detention. “[I]t of course has long been clearly established that knowingly arresting a defendant without probable cause, leading to the defendant’s subsequent confinement and prosecution, violates the Fourth Amendment’s proscription against unreasonable searches and seizures.” Wilkins v. DeReyes, 528 F.3d 790, 805 (10th Cir.2008). In the context of a criminal prosecution, this court has recently noted that an officer’s mistake of “substantive law” is not the kind of mistake “that the Supreme Court has excused,” and we reversed a conviction on the ground that evidence had been obtained in violation of the Fourth Amendment. United States v. Nicholson, 721 F.3d 1236, 1243 (10th Cir.2013).
In another recent ease, our court addressed this issue in a case with closely analogous facts and held that an officer should have been denied qualified immunity for the continued detention of the plaintiff when facts learned during the initial detention would have made it clear to a reasonable officer in the defendant’s position that she “lacked lawful authority to extend the stop.” Courtney v. Oklahoma, 722 F.3d 1216, 1223 (10th Cir.2013).
*1133 In that case, Mr. Courtney had been stopped for speeding and for not dimming his lights upon the approach of another car. Upon questioning Courtney, Trooper Smith became suspicious that Courtney was involved in some kind of illegal activity. After giving Courtney a warning ticket and indicating to Courtney that he was free to go by wishing him safe travels, Trooper Smith employed the law enforcement technique of quickly asking Courtney if he would be willing to answer some more questions. Courtney declined, whereupon Smith ordered him to return to the patrol car. On further questioning, Courtney told Smith that there was a firearm in the trunk of the car.
During the investigative detention which followed, Trooper Smith ran a routine background check on Courtney. The trooper received a report which informed him that Courtney had been adjudicated guilty of felony breaking and entering in another state, twelve years earlier. The report also indicated that the charge was disposed of as a “juv adjudication.” Our court noted that a juvenile adjudication over ten years old does not qualify under Oklahoma law as an underlying felony that would have made possession of the gun a crime. Therefore, we held, a reasonable officer would have known that there was no probable cause to believe that Mr. Courtney had committed the crime of felon-in-possession. Consequently, we reversed the district court and held that Trooper Smith was not entitled to qualified immunity.
Similarly, here a reasonable officer would have known that there was no probable cause to believe that Mr. Panagoula-kos had committed the offense of possession of a firearm in violation of a protective order.
I have deferred to now discussing the reasons for my statement that there was no probable cause to further detain Mr. Panagoulakos after the protective order had been examined. I believe that the district court’s reasoning was absolutely correct. The district court carefully and correctly explained why the protective order did not provide but instead negated probable cause to charge Mr. Panagoula-kos with a criminal offense of possession of a firearm in violation of a protective order.
First, the magistrate judge (sitting by consent of the parties) set out the elements of the offense under federal law, 18 U.S.C. § 922(g)(8). The elements include that the protected person be an “intimate partner” of the restrained person. As the district court noted, “[T]he order made no finding of an ‘intimate partner’ relationship and a reasonable officer would have understood that by its terms, Plaintiffs right to bear arms was not restricted.” Although the analysis here is focused on the reasonable officer and not the subjective thought processes of Officer Yazzie, the district court nevertheless noted that Officer Yazzie had admitted being unaware that federal law requires a finding of “intimate partners” to trigger the firearms prohibition, and so she took no note of the lack of such a finding. Instead, Officer Yazzie believed— incorrectly — that under state law it was always unlawful for a restrained person to possess a firearm (although she apparently believed that an order could expressly provide otherwise), and the officer understood that the arrest was being made under state law.
As the district court noted, however, Officer Yazzie’s understanding of state law was mistaken:
The New Mexico Family Violence Protection Act does not make it a per se violation of an Order of Protection for a restrained party to possess or carry a firearm, however. See NMSA 1978, § 40-13-6(D). Likewise, the Order of *1134 Protection at issue in this case does not indicate that it constitutes a violation of the Order for Plaintiff to possess or carry a firearm.
Appx. at 189. Consequently, here the district court concluded that
Defendant Yazzie’s erroneous understanding of the law resulted in continued detention without legal authority. Moreover, a reasonable officer would have understood that the probable cause relied upon for the arrest had dissipated based on new absolute information dispelling a required element for the arrest and continuing prosecution.

Id.

The magistrate judge here went on to consider whether Officer Yazzie might nevertheless be entitled to qualified immunity, focusing on whether the officer’s mistake of law was one that could be considered reasonable.[2] Because the requirements of both state and federal law were clear and unambiguous, and both had been established law “for a long time,” the court held that the mistake was not reasonable. Id. at 190. Further, “[t]he face of the actual Order of Protection vitiated the probable cause that existed at the time of Plaintiffs initial arrest, and Plaintiff was therefore unlawfully detained.” Id. at 190-91.
For these reasons, I am convinced that the district court was correct not only in denying Officer Yazzie’s motion for summary judgment based on qualified immunity, but also in granting partial summary judgment in favor of Mr. Panagoulakos on his claim that his Fourth Amendment rights were violated by Officer Yazzie.
Accordingly, I must respectfully dissent.

. Without any explanation, the majority says that this is a conclusion “to which we do not subscribe.” The majority even purports to detect that Mr. Panagoulakos has expressed agreement with that view. Maj. op. at 1129— 30 & n. 2. Of course there would be no basis whatsoever for this lawsuit if Mr. Panagoula-kos shared that view, which cannot be fairly inferred from the one statement from his brief that the majority cites.

. Here the judge cited Axson-Flynn v. Johnson, 356 F.3d 1277, 1300 (10th Cir.2004).