FILED
United States Court of Appeals
Tenth Circuit

March 23, 2021

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

CORTEZ N. MEADOWS,

     Plaintiff - Appellant,

v.

THE CITY OF OKLAHOMA CITY;
KRISTOPHER GELLENBECK,
individually and in his official capacity as
an Oklahoma City Police Officer,

     Defendants - Appellees.

No. 20-6041
(D.C. No. 5:17-CV-00226-J)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **PHILLIPS**, **McHUGH**, and **CARSON**, Circuit Judges.

_____

This case arises from a 911 call reporting a kidnapping. The plaintiff in this case,

Cortez Meadows, was stopped by police as a result of the 911 call. It turned out he was

giving a ride home to a friend, but by the time the police figured out Meadows was not in

the act of kidnapping, the traffic stop had given rise to probable cause to arrest Meadows

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. _See_ Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

for other reasons, including driving under the influence. The Oklahoma City district attorney filed charges against Meadows, but later dismissed them.

Meadows filed pro se claims against the arresting officer, Kristopher Gellenbeck, for false arrest under 42 U.S.C. § 1983 and related state claims. Meadows also asserted a municipal liability claim against the City of Oklahoma City under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). The district court granted summary judgment in favor of the defendants, and we affirm.

## I. BACKGROUND

On March 26, 2016, the Oklahoma City Police Department received two 911 calls reporting an alleged abduction at a hotel in Oklahoma City. The first caller reported an armed man was holding a woman at the hotel against her will. While en route to the hotel, Officer Kristopher Gellenbeck learned of a second 911 call reporting that the woman and the man had left the hotel in a red Honda Accord. The second 911 caller gave the license plate number and reported the man was carrying an AK-47.

Shortly after the second call, another officer spotted a vehicle matching the description given by the caller and initiated a traffic stop. Cortez Meadows was the driver, and Gellenbeck arrived on the scene as the other officer was directing Meadows to get out of the car. Gellenbeck—still operating on the assumption that a kidnapping had just been stopped—patted Meadows down, handcuffed him, and placed him in the back seat of a patrol car. During this interaction, Gellenbeck observed a strong odor of alcohol

2

on Meadows's breath. He had also observed a .22-caliber semiautomatic rifle in the Honda Accord.

Gellenbeck and Meadows sat in the patrol car for a few minutes until the other officer approached and reported Meadows's passenger was not being held by Meadows against her will. As it turned out, Meadows was giving the woman a ride home after she asked for his assistance in escaping an uncomfortable situation at the hotel.

Gellenbeck then asked Meadows how much he had had to drink. When Meadows refused to answer, Gellenbeck had Meadows step out of the car. Gellenbeck observed nystagmus in both of Meadows's eyes,[1] and that they were bloodshot and watery. He also observed Meadows's speech was slurred and that he was unsteady on his feet. Gellenbeck did not, however, conduct a standard field sobriety test. In addition to these observations, Gellenbeck also discovered Meadows's driver's license had been revoked and suspended.

Meadows was charged with driving under the influence, transporting an open container of alcohol, and driving with a suspended and revoked license. An Oklahoma County district court judge approved a probable cause affidavit and the district attorney filed charges, which were later dismissed.

After the charges were dismissed, Meadows sued Gellenbeck under § 1983 for false arrest and the City of Oklahoma City for municipal liability under *Monell*, 436 U.S.

---

[1] Nystagmus describes fast, uncontrollable movements of the eyes, which is "a common indicator of impairment." *Green v. Throckmorton*, 681 F.3d 853, 857 (6th Cir. 2012).

3

658. Meadows also asserted several related state-law claims. The district court granted summary judgment on all claims, and Meadows timely appealed.

## II. DISCUSSION

Meadows argues the district court erred in granting summary judgment in favor of the defendants. We review de novo a district court's granting of summary judgment under Fed. R. Civ. P. 56. *Burnett v. Southwestern Bell Tel., L.P.*, 555 F.3d 906, 907 (10th Cir. 2009). We liberally construe Meadows's pro se filings, but we do not assume the role of advocate. *Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).

### A. False Arrest Under § 1983

"In the context of a false arrest claim, an arrestee's constitutional rights were violated if the arresting officer acted in the absence of probable cause that the person had committed a crime." *Kaufman v. Higgs*, 697 F.3d 1297, 1300 (10th Cir. 2012). Probable cause requires only a "fair probability" of illegal conduct, not "proof that something is more likely true than false." *United States v. Denson*, 775 F.3d 1214, 1217 (10th Cir. 2014). It is measured by the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 232-33 (1983).

Here, the district court correctly concluded Gellenbeck had probable cause for Meadows's arrest. First, the 911 calls were sufficiently reliable based on the details provided. *See Navarette v. California*, 572 U.S. 393, 398-99 (2014) (concluding an anonymous 911 call contemporaneously reporting a specific color and type of vehicle, along with the license plate number, lent "significant support to the tip's

4

reliability"). Gellenbeck arrived at the scene and observed circumstances that matched precisely the details that had been provided by the 911 calls. Although the 911 callers were incorrect about Meadows's passenger, our assessment of probable cause must be based on what the officer knew at the time. *Cortez v. McCauley*, 478 F.3d 1108, 1116 (10th Cir. 2007) ("we ask whether an objectively reasonable officer could conclude *that the historical facts at the time of the arrest* amount to probable cause" (emphasis added)).

Second, by the time Gellenbeck understood there had been no kidnapping, he had developed reasonable suspicion of Meadows's intoxication. *See Donahue v. Wihongi*, 948 F.3d 1177, 1197-98 (10th Cir. 2020) (while reasonable suspicion must exist at all stages of a detention it need not be based on the same facts throughout). In particular, Gellenbeck noticed a strong odor of alcohol on Meadows's breath. *See Wilder v. Turner*, 490 F.3d 810, 815 (10th Cir. 2007) (citing *United States v. Neumann*, 183 F.3d 753, 756 (8th Cir. 1999)). And once Gellenbeck had reasonable suspicion, his subsequent investigation led to facts giving rise to probable cause, including Meadows's unsteadiness, slurred speech, nystagmus, and bloodshot and watery eyes. *See Schmerber v. California*, 384 U.S. 757, 768-69 (1966) (holding there was "plainly probable cause" where the officer smelled liquor on suspect's breath and observed suspect's eyes were "bloodshot, watery, sort of a glassy appearance" (internal quotation marks omitted)).

In short, because there was probable cause for Gellenbeck to arrest Meadows, he cannot establish a violation of his Fourth Amendment rights.

**B.** *Monell* **Claim**

To establish municipal liability under § 1983, "a plaintiff must show 1) the existence of a municipal policy or custom, and 2) that there is a direct causal link between the policy or custom and the injury alleged." *Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 782 (10th Cir. 1993). The district court granted summary judgment in Oklahoma City's favor on the ground that Meadows failed to produce evidence in support of his allegation that Oklahoma City had a custom or policy of "ignor[ing] police misconduct." R. Vol. II at 251-54.

We need not address the district court's ruling on this point, however, because the district court later granted Gellenbeck's motion for summary judgment on the ground that no constitutional violation had occurred. R. Vol. II at 515 ("[T]he undisputed facts show that none of Defendant Gellenbeck's interactions with Plaintiff violated the Fourth Amendment.").

Because Meadows has not established a violation of his constitutional rights, his claim against Oklahoma City necessarily fails. *Hinton*, 997 F.2d at 782 ("A municipality may not be held liable where there was no underlying constitutional violation by any of its officers."). We therefore affirm the district court's grant of summary judgment on this alternative ground. *See Amro v. Boeing Co.*, 232 F.3d 790, 796 (10th Cir. 2000) ("[W]e may affirm the district court for any reason supported by the record.").

**C. State-Law Claims**

Meadows also asserted state-law claims against Gellenbeck and Oklahoma City, including false arrest, wrongful imprisonment, malicious prosecution, and intentional

6

infliction of emotional distress. The district court correctly granted summary judgment on these claims.

First, the state-law torts of false arrest and malicious prosecution both require a lack of probable cause. *Young v. First State Bank*, 628 P.2d 707, 709 (Okla. 1981) (malicious prosecution); *Overall v. State ex rel. Dep't of Pub. Safety*, 910 P.2d 1087, 1091 (Okla. Civ. App. 1995) (false arrest). As discussed above, there was probable cause for Meadows's arrest, so these state-law claims necessarily must fail.

Second, a claim for wrongful imprisonment is "purely a matter between private persons for a private end, [with] no intention of bringing the person detained before a court, or of otherwise securing the administration of the law." *Delong v. State ex rel. Okla. Dep't of Pub. Safety*, 956 P.2d 937, 938 (Okla. Civ. App. 1998) (internal quotation marks omitted). Because Gellenbeck was acting as a police officer under authority of law when he arrested Meadows, the district court correctly granted summary judgment as to this claim.

Third, one of the elements of intentional infliction of emotional distress is that the defendant's conduct was extreme and outrageous. *Computer Publ'ns, Inc. v. Welton*, 49 P.3d 732, 735 (Okla. 2002). This requires a showing of conduct that is "beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Breeden v. League Servs. Corp.*, 575 P.2d 1374, 1377 (Okla. 1978) (internal quotation marks omitted). As discussed above, Gellenbeck's conduct was objectively reasonable under the circumstances. Accordingly, Meadows was entitled to summary judgment.

### III. CONCLUSION

We reject Meadows's arguments and affirm the district court's conclusion that Gellenbeck had probable cause for Meadows's arrest. Because there was probable cause, Gellenbeck's actions did not violate the Fourth Amendment, and the *Monell* claim necessarily fails in the absence of a constitutional violation. Meadows's related state-law claims fail largely for the same reasons.

Entered for the Court


Carolyn B. McHugh
Circuit Judge