EBEL, Circuit Judge.
In this direct criminal appeal, Defendant-Appellant Enrique De La Cruz challenges the district court’s decision to deny his motion to suppress evidence the United States obtained during an investigative seizure. Having jurisdiction under 28 U.S.C. § 1291, we REVERSE the denial of De La Cruz’s suppression motion.
I. BACKGROUND
The evidence presented at the suppression hearing, viewed in the light most favorable to the Government, see United States v. Hunter, 663 F.3d 1136, 1141 (10th Cir.2011), established the following: On Sunday morning, February 13, 2011, three Immigration and Customs Enforcement (“ICE”) agents were at Gill’s Truck Wash in Tulsa, Oklahoma. They were looking *1195 for Juan Guel-Rivera, thought to be unlawfully in the United States. Guel-Riv-era purportedly worked at the truck wash.
Because the truck wash was closed, there was no one there when the agents arrived. Soon thereafter a car with dark tinted windows drove up to the truck wash to drop off a passenger. One of the three ICE agents, John Stanko, got a one-to two-second glimpse of the driver through the windshield as the car drove by the agents. Comparing that brief glimpse to the photo that Agent Stanko had of Guel-Rivera, the agent thought that the car’s driver might be Guel-Rivera. The agents, therefore, activated their emergency lights and parked their two vehicles behind the suspect’s car, blocking its exit.
The car’s driver was, in fact, De La Cruz, who was dropping off his brother Armando for work at the truck wash. Armando was in the front passenger seat of the car, while his wife and De La Cruz’s wife and mother-in-law were in the back seat.
Armando, carrying his sack lunch, was in the process of exiting the passenger side of the car when Agent Stanko got out of his vehicle and ordered De La Cruz, who had his window rolled down, to turn off the engine, place the keys on top of the car and get out of the vehicle. As De La Cruz did so, Armando ran away. Stanko and one of the other two ICE agents gave chase, apprehending Armando two hundred yards away and discovering that he was in the United States illegally.
When Armando tried to flee from the ICE agents, De La Cruz remained beside the car and the rest of his family stayed in the vehicle. The third ICE agent handcuffed De La Cruz “for safety reasons” and waited with him until the other two agents returned with Armando. (R. v.2 at 58.)
When Agent Stanko returned, it became apparent to him that De La Cruz was not Guel-Rivera, the man for whom the agents had been looking. Nevertheless, Agent Stanko continued to detain De La Cruz and asked to see some identification. De La Cruz presented an Oklahoma identification card which the agents recognized to be fake. Using the information on the card, the agents discovered that De La Cruz was unlawfully in the United States after having been previously deported. On that basis, the agents arrested him. While in custody and after receiving Miranda[1] warnings, De La Cruz confirmed the immigration information the agents had about him.
A federal grand jury indicted De La Cruz for unlawfully reentering the United States after a previous deportation, in violation of 8 U.S.C. § 1326(a). De La Cruz moved to suppress the evidence agents obtained from him at the truck wash, arguing that, at the time the agents asked him for his identification, they were no longer justified in detaining him because the agents no longer had reasonable suspicion to believe that De La Cruz was involved in criminal activity. After conducting an evi-dentiary hearing, the district court denied De La Cruz’s suppression motion. He then entered a conditional guilty plea, see Fed.R.Crim.P. 11(a)(2), reserving the right to appeal the district court’s suppression ruling. This appeal followed.
II. STANDARD OF REVIEW
In reviewing the denial of a suppression motion, this court views the evidence in the light most favorable to the Government and accepts the court’s factual findings unless clearly erroneous. See Hunter, 663 F.3d at 1141. We review de novo the ultimate determination of the rea *1196 sonableness of a search or seizure under the Fourth Amendment. See id.
III. ANALYSIS
The district court denied De La Cruz’s suppression motion on alternate bases, holding 1) the agents had reasonable suspicion to believe De La Cruz was involved in criminal activity sufficient to justify his continued detention while agents obtained his identification; and, alternatively, 2) De La Cruz’s identification is never suppressible even if there was an unlawful seizure. We conclude the district court erred in reaching both of these conclusions.
A. The district court erred in determining that the agents had reasonable suspicion to continue to detain De La Cruz in order to obtain his identification
The Fourth Amendment protects citizens from “unreasonable searches and seizures” by government officials. U.S. Const, amend. IV; see United States v. Burleson, 657 F.3d 1040, 1044-A5 (10th Cir.2011). The Government bears the burden of proving that a seizure is reasonable. See United States v. Kitchell, 653 F.3d 1206, 1216 (10th Cir.), cert. denied, — U.S. -, 132 S.Ct. 435, 181 L.Ed.2d 282 (2011).
This case involves an investigative, or Terry[2], stop, which is a seizure for Fourth Amendment purposes. See Burleson, 657 F.3d at 1045. Such a seizure is reasonable if it is justified by articulable reasonable suspicion that the person detained has committed or is about to commit a crime. See Florida v. Royer, 460 U.S. 491, 498, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). Reasonable suspicion is “something more than an inchoate and un-particularized suspicion or hunch,” but “is considerably less than proof by a preponderance of the evidence or [proof] required for probable cause.” United States v. Chavez, 660 F.3d 1215, 1221 (10th Cir.2011) (internal quotation marks omitted). Reasonable suspicion is measured by an objective standard; the agents’ subjective beliefs and intentions, therefore, are irrelevant. See Ashcroft v. al-Kidd, — U.S. -, 131 S.Ct. 2074, 2082, 179 L.Ed.2d 1149 (2011); Chavez, 660 F.3d at 1222.
In considering whether an investigative stop is reasonable, we conduct a two-step inquiry, asking first whether the detention was justified at its inception and, second, whether the agents’ actions were reasonably related in scope to the circumstances initially justifying the detention. See Lundstrom, v. Romero, 616 F.3d 1108, 1120 (10th Cir.2010).
1. The duration of De La Cruz’s detention cannot be justified by the initial suspicion that he was Guel-Riv-era
Here, De La Cruz concedes that, at the time the agents initially seized him by surrounding his vehicle, they had reasonable suspicion to believe that he was Guel-Rivera. That suspicion justified agents detaining De La Cruz briefly in order to verify or dispel their suspicions that he was Guel-Rivera. See Royer, 460 U.S. at 500, 103 S.Ct. 1319. But any reasonable suspicion that De La Cruz was Guel-Riv-era was dispelled when Agent Stanko, who had a picture of Guel-Rivera, returned from apprehending Armando, had a chance to look at De La Cruz, and realized that De La Cruz was not Guel-Rivera. Guel-Rivera was twenty-eight years old, 5'8", 120 pounds with black eyes, brown hair, and a receding hairline, while De La Cruz was younger, shorter, with no receding hairline, different facial features, and a tattoo on his neck. These discrepancies, viewed by an objective officer in Agent *1197 Stanko’s position, dispelled any reasonable suspicion that De La Cruz was Guel-Riv-era.[3]
Agent Stanko, nevertheless, continued to detain De La Cruz and obtained his identification “just to be safe ... because I still wasn’t a hundred percent sure.”[4] (R. v.2 at 18.) The existence of reasonable suspicion, however, is measured from the perspective of an objectively reasonable officer, not from the subjective perspective of the particular officer on scene. See al-Kidd, 181 S.Ct. at 2082; Chavez, 660 F.3d at 1222. Here, considering the totality of the circumstances, see Chavez, 660 F.3d at 1221, any reasonable suspicion that Guel-Rivera was the driver would have been dispelled when an objective officer in Agent Stanko’s position was able to compare the photo he had of Guel-Rivera with De La Cruz. At that point, any justification for detaining De La Cruz vanished. See Millan-Diaz, 975 F.2d at 722. “‘[A]n investigative detention must be temporary and last no longer than is necessary to effectuate’ the purpose of either dispelling or confirming the officer’s reasonable suspicion.” United States v. White, 584 F.3d 935, 953 (10th Cir.2009) (quoting Royer, 460 U.S. at 500, 103 S.Ct. 1319). Once reasonable suspicion has been dispelled, “[ejven a very brief extension of the detention without consent or reasonable suspicion violates the Fourth Amendment.” [5] Burleson, 657 F.3d at 1045.
*1198 2. The duration of De La Cruz’s detention cannot be justified by the presence and flight of Armando
An investigative seizure can continue, even after the initial suspicion has dissipated, if “the additional detention is supported by [new] reasonable suspicion of criminal activity. In other words, reasonable suspicion must exist at all stages of the detention, although it need not be based on the same facts throughout.” United States v. Soto-Cervantes, 138 F.3d 1319, 1322 (10th Cir.1998) (citation omitted). The Government argues that, in this case, the ICE agents acquired new reasonable suspicion to continue to detain De La Cruz, based on Armando’s flight and the agents’ ensuing discovery that he was in the United States illegally. The Government, however, has failed to meet its burden of demonstrating that the totality of these circumstances established articulable reasonable suspicion to believe that De La Cruz was involved in criminal activity, after the agents realized he was not Guel-Rivera and before De La Cruz gave them a false identification card. See Kitchell, 653 F.3d at 1218-19.
De La Cruz’s initial seizure was based solely on the agents’ belief that he might be Guel-Rivera. The initial seizure was not predicated on suspicion that De La Cruz, as the driver of the vehicle, was otherwise engaged in criminal activity. For example, the agents did not have reasonable suspicion to believe that De La Cruz, as the driver of the vehicle, had committed any traffic violations that would justify conducting a traffic stop.
Flight can create reasonable suspicion that the person fleeing is involved in criminal activity. See Illinois v. Wardlow, 528 U.S. 119, 121, 124-25, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000); United States v. Bonner, 363 F.3d 213, 218 (3d Cir.2004); see also United States v. Cui Qin Zhang, 458 F.3d 1126, 1128 (10th Cir.2006) (noting flight suggests guilt). But De La Cruz did not flee; only Armando fled.
One could imagine other circumstances where the flight of a passenger might create reasonable suspicion that the driver was also engaged in criminal activity. But this case does not present such circumstances. When the agents apprehended Armando, they discovered he was illegally in the United States. That is a status crime, which would not necessarily suggest that the driver of the vehicle from which he fled was also involved in criminal activity-
One could further imagine other circumstances where the discovery that a fleeing passenger was in the United States illegally might engender reasonable suspicion that the driver and the rest of the vehicle’s occupants might also be unlawfully in the country. That might be the case, for example, if the stop occurred close to the U.S.-Mexican border on a highway or road frequently used by illegal immigrants to enter the United States undetected and multiple people fled from a van. But those are not the circumstances presented here.
Based on the Court’s inquiry, the Government suggested that an objective officer could have reasonably suspected De La Cruz of unlawfully transporting an illegal alien, in violation of 8 U.S.C. § 1324(a)(l)(A)(ii).[6] But to be unlawful, such transportation must be in furtherance of the alien’s violation of the law. See United States v. Franco-Lopez, 687 F.3d 1222, 1226-27 (10th Cir.2012) (citing United States v. Barajas-Chavez, 162 F.3d *1199 1285, 1287 (10th Cir.1999) (en bañe)). Transportation furthers an alien’s violation of the law if it “will help, advance, or promote the alien’s illegal entry or continued illegal presence in the United States.” Barajas-Chavez, 162 F.3d at 1288. Thus, § 1324(a)(1)(A)(ii) proscribes, for example, transportation of an alien by friends or family to enable the illegal alien to find work and/or evade authorities. Barajas-Chavez, 162 F.3d at 1289 n. 2. But § 1324(a)(l)(A)(ii) “does not encompass persons who come into daily contact with undocumented aliens and who, with no evil or criminal intent, intermingle with illegal aliens socially and otherwise.” Barajas-Chavez, 162 F.3d at 1288 (internal quotation marks, alteration omitted).
The circumstances at issue here, viewed objectively, suggested only that the driver was dropping off Armando to work at the truck wash, just an ordinary social interaction that occurs every day between family, friends and acquaintances. Here, it occurred a significant distance from the U.S. border. Nothing about these circumstances suggested that the driver, by dropping Armando off, apparently at a job he already had, was in any way furthering his unlawful presence in the country.
Even if the agents had reasonable suspicion to believe Gill’s Truck Wash employed illegal aliens — based on information and circumstances suggesting that both Guel-Rivera and Armando were unlawfully in the country and both worked at the truck wash — such a belief would not justify seizing De La Cruz. See Alarcon-Gonzalez, 73 F.3d at 293 (holding that a reasonable basis for suspecting that “some roofers might be illegal aliens ... did not give [agents] a reasonable basis for suspecting that [the defendant] in particular might be one of them”). The evidence presented at the suppression hearing suggested only that De La Cruz was dropping off Armando for work at the truck wash, not that De La Cruz himself worked there.
An officer may not “legally detain a person simply because criminal activity is afoot. The particular person [who is detained] must be suspected of criminal activity.” Romero v. Story, 672 F.3d 880, 887-88 (10th Cir.2012) (internal quotation marks omitted); see also Pena-Montes, 589 F.3d at 1056; Alarcon-Gonzalez, 73 F.3d at 293. The evidence here, viewed by an objective officer in Agent Stanko’s position, indicated only that De La Cruz drove an illegal immigrant to work. Under these circumstances, simply being acquainted with someone who turns out to be in the country illegally does not, without more, create reasonable suspicion that the acquaintance is involved in illegal activity. This court has previously declined to rely on the fact that one member of a group was unlawfully in this country to establish reasonable suspicion to believe that another member of the group was involved in criminal activity. See Soto-Cervantes, 138 F.3d at 1324 (in determining whether officers had reasonable suspicion to believe the defendant was in the United States unlawfully, declining to rely on facts that two other members of a group of four or five men had no identification and one of them admitted to officers that he was in the country illegally; focusing instead on factors that gave officers reasonable suspicion that the defendant himself was involved in criminal activity). Here, too, we reject the general premise that once someone has been identified by authorities as unlawfully in the United States, anyone providing him with transportation for his daily activities is also reasonably suspected of criminal activity. See United States v. Brignoni-Ponce, 422 U.S. 873, 885-87, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975) (noting that apparent Mexican ancestry of vehicle’s occupants, alone, did not provide rea *1200 sonable suspicion that they were illegal aliens).
Each case must rise or fall on the particular facts of that case. Here, the Government has failed to establish that an objective officer would have had reasonable suspicion to believe that De La Cruz was involved in criminal activity, once the agents determined that he was not Guel-Rivera and before De La Cruz provided the agents with a false identification card.
B. The district court erred in concluding, alternatively, that De La Cruz’s identification is not suppressible, even if there was an unlawful seizure
The district court, alternatively, held that De La Cruz’s identity itself is not suppressible, even if there was an unlawful seizure. We cannot affirm the district court’s denial of De La Cruz’s suppression motion on that basis, either.
The district court based its conclusion on language in Immigration and Naturalization Service v. Lopez-Mendoza, 468 U.S. 1032, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984). In Lopez-Mendoza, a case addressing civil deportation hearings, the Supreme Court noted that “[t]he ‘body’ or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred.” Id. at 1039, 104 S.Ct. 3479. Lopez-Mendoza, however, does not “exempt[ ] from the ‘fruits’ doctrine all evidence that tends to show a defendant’s identity.” United States v. Olivares-Rangel, 458 F.3d 1104, 1111 (10th Cir.2006). Rather, Lopez-Mendoza’s “statement that the ‘body’ or identity of a defendant are ‘never suppressible’ applies only to cases in which the defendant challenges the jurisdiction of the court over him or her based upon the unconstitutional arrest, not to cases in which the defendant only challenges the admissibility of the identity-related evidence.” Olivares-Rangel, 458 F.3d at 1111. The Tenth Circuit interpreted Lopez-Mendoza’s language in this manner, analyzing the cases on which Lopez-Mendoza relied and considering Lopez-Mendoza’s treatment of the two civil deportation proceedings at issue in that case. See Olivares-Rangel, 458 F.3d at 1111. The Tenth Circuit went on to conclude that
[sjeeking to suppress one’s very identity and body from a criminal proceeding merely because of an unconstitutional arrest is the sort of jurisdictional challenge foreclosed by Lopez-Mendoza. The language in Lopez-Mendoza merely says that the defendant cannot suppress the entire issue of his identity. A defendant may still seek suppression of specific pieces of evidence (such as, say, fingerprints or statements) under the ordinary rules announced in Mapp [ v. Ohio, 367 U.S. 643, 648, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) (requiring suppression of any evidence obtained during illegal police conduct) ] and Wong Sun[ v. United States, 371 U.S. 471, 485, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) (requiring suppression of evidence deemed to be “fruit of the poisonous tree,” i.e., discovered as a direct result of unlawful police conduct) ]. A broader reading of Lopez-Mendoza would give the police carte blanche powers to engage in any manner of unconstitutional conduct so long as their purpose was limited to establishing a defendant’s identity. We do not believe the Supreme Court intended Lopez-Mendoza to be given such a reading.
Id. Thus, the Tenth Circuit concluded
that the “identity” language in Lopez-Mendoza refers only to jurisdiction over a defendant and it does not apply to evidentiary issues pertaining to the ad *1201 missibility of evidence obtained as a result of an illegal arrest and challenged in a criminal proceeding. Instead, we utilize the normal and generally applicable Fourth Amendment exclusionary rule to determine whether challenged identity-related evidence should be excluded under the circumstances present in the particular case.
Id. at 1112.
Here, De La Cruz never argued that the district court lacked jurisdiction over him. Instead, he sought only to apply “the normal and generally applicable Fourth Amendment exclusionary rule,” id., to suppress the identification card he gave the agents and the information the agents learned as a result of that identification card, that De La Cruz was unlawfully in the United States after having been previously deported. Therefore, the district court erred in concluding that De La Cruz’s identification was not suppressible, even if there was an unlawful seizure.
IV. CONCLUSION
For the foregoing reasons, we REVERSE the district court’s decision denying De La Cruz’s suppression motion and REMAND this case to the district court for proceedings consistent with this decision.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

. See United States v. Alarcon-Gonzalez, 73 F.3d 289, 292-93 (10th Cir.1996) (holding that reasonable suspicion that one of two roofers was reaching for a gun was dispelled, prior to officers questioning roofers about their immigration status, when it became obvious to officers that the roofer was holding a roofing tool instead of a weapon); United States v. McSwain, 29 F.3d 558, 560-61 (10th Cir.1994) (holding that reasonable suspicion that vehicle's temporary registration sticker was invalid dissipated once officer approached the vehicle and saw that the temporary registration was valid and had not expired); United States v. Millan-Diaz, 975 F.2d 720, 721-22 (10th Cir.1992) (holding that any reasonable suspicion that vehicle was transporting illegal aliens was dispelled when it became obvious that there were no passengers in the vehicle or in the trunk); see also United States v. Trestyn, 646 F.3d 732, 743-44 (10th Cir.2011); United States v. Pena-Montes, 589 F.3d 1048, 1050, 1054-55 (10th Cir.2009); United States v. Edgerton, 438 F.3d 1043, 1044 (10th Cir.2006); cf. Amundsen v. Jones, 533 F.3d 1192, 1200 (10th Cir.2008) (holding that driver's conduct during traffic stop did not clearly refute officer’s reasonable suspicion that driver was intoxicated). *1198 United States v. Stewart, 473 F.3d 1265, 1269 (10th Cir.2007).

. During the suppression hearing, Agent Stanko testified to the following:
Q. And at some point during this whole process you conclusively determined that Mr. [De La Cruz] was not Guel-Rivera? A. Yes, ma'am. Q. Do you recall when that would have been or what process happened before you believed that to be true?
A. I can say without a doubt upon returning to the scene, at this point, upon seeing [De La Cruz] stand up, I noticed the tattoo on his neck, I noticed his person, the hairline. All of the factors, all of the above, whenever I returned to the scene and was able to get an entire visual of the defendant I had a pretty good idea that he wasn't Guel-Rivera, but just to be safe I went ahead and ran his information anyway because I still wasn't a hundred percent sure.
(R. v.2 at 18.) Agent Stanko testified further that, after seeing De La Cruz standing outside the car, "there were definitely indications” that he was not Guel-Rivera. (Id. at 42.)

.The fact that there was no longer any justification to detain De La Cruz further distinguishes this case from the authority on which the dissent relies, which permits an officer to ask questions and seek identification during "the course of a lawful stop.” Dissent at 1201, 1204. The situation here is also distinguishable from a lawful traffic stop, during which the officer is permitted to determine, among other things, whether the driver has authority to operate the vehicle and a motorist expects to wait a reasonable time while the officer checks the driver’s license and vehicle registration. See United States v. Holt, 264 F.3d 1215, 1221 (10th Cir.2001) (en banc), overruling on other grounds recognized in

. The Court assumes that the Government adequately raised this argument in the district court and on appeal.