**UNITED STATES COURT OF APPEALS**

**June 20, 2014**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

    No. 13-1315
(D.C. No. 1:12-CR-00473-PAB-1)
(D. Colo.)

CARLOS VIDAL ACHANA-SUASO,

    Defendant - Appellant.

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **HARTZ**, and **HOLMES**, Circuit Judges.

Carlos Vidal Achana-Suaso ("Achana") conditionally pled guilty to illegal re-entry after deportation in violation of 8 U.S.C. § 1326(a) and (b)(2), reserving the right to appeal the district court's refusal to suppress his fingerprints and immigration file. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we reverse the district court's decision to the extent that it denied Achana's suppression motion and remand the case to the district court with instructions to vacate its judgment and sentence and to conduct

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 32.1.

further proceedings consistent with this order.

**I**

On November 8, 2012, police officers were executing a buy-bust operation in Denver, Colorado.[1] The Denver Police Department ("DPD") had notified U.S. Immigration and Customs Enforcement ("ICE") agents about the operation, so that ICE could investigate the immigration status of individuals arrested or detained by police.

Detectives running the buy-bust operation informed DPD Officer Robert Southern and his partner that an individual, later identified as Achana, was walking back and forth between bushes near the corner of West 12th Avenue and Santa Fe Drive. The detectives believed Achana was delivering drugs hidden in the bushes to other drug dealers. Southern and his partner approached Achana, directing him to "[s]top." They immediately patted him down for weapons and then searched him for contraband. No weapons or contraband were found.

Achana nonetheless was placed in handcuffs. He was speaking only in Spanish. Southern acknowledged at the suppression hearing that, because he does not speak Spanish, his communications with Achana "were extremely limited." Southern told Achana why he was stopped, but only in English. Detectives then arrived on scene and took over the investigation.

As the DPD concluded its investigation of Achana, ICE agents arrived, including

---

[1] In a buy-bust operation, undercover police officers purchase narcotics from a drug dealer, who is then arrested.

Nicholas Fowler, a supervisor and deportation officer.  Six to eight DPD officers remained in the area around Achana, and the district court found there was no evidence to suggest that his handcuffs had been removed.  DPD officers informed Fowler that their investigation had concluded, but an unspecified officer gave Fowler an identification card from the Republic of Honduras that appeared to belong to Achana.  Fowler approached Achana, identified himself as an ICE officer, and asked if the identification belonged to him.  Achana said that it did.  Pursuant to Fowler's questioning, Achana subsequently admitted that he had entered the United States illegally and did not have any immigration documents allowing him to be present in the country.  Fowler testified that he would not have let Achana leave before he was able to inquire about Achana's alienage.  Fowler also testified that the suspicion he was required to possess in order to question Achana was based upon "empirical data" regarding drug dealing in the area, the Honduran identification card, and Achana's apparent lack of familiarity with English.

DPD had not found any grounds to arrest Achana, but ICE took him into custody. Achana was charged in a single-count indictment with illegal re-entry after deportation in violation of 8 U.S.C. § 1326(a).  The indictment gave notice that Achana was subject to an enhanced penalty under § 1326(b)(2) because his previous deportation was subsequent to a conviction for a felony offense.[2]

---

[2] The plea agreement details that in 2011, Achana was convicted of Re-Entry after Deportation in the United States District Court for the District of Arizona, and in 2007, he was convicted of Possession of a Controlled Counterfeit Substance with Intent to

Continued . . .

Achana moved to suppress all of the evidence against him "as fruit of the illegal and unlawful detention and arrest on November 8, 2012." The government called Southern and Fowler to testify at the suppression hearing. After considering the evidence, the district court ruled that the initial contact with Achana by Southern and his partner did not raise constitutional concerns. However, the court stated that after the DPD finished with Achana, Fowler was required to have reasonable suspicion to extend the detention. Fowler's three grounds for doing so were rejected or deemed insufficient. These included the Honduran identification card, which was suppressed due to the government's failure to demonstrate that it was properly obtained. Achana's statements to Fowler were therefore also suppressed because the court determined Fowler did not have reasonable suspicion to conduct his interrogation. Nonetheless, the district court concluded that there was "a sufficient factual basis to determine whether . . . the purpose of the particular illegality here was to obtain fingerprints from the defendant," although "there [was] no testimony about . . . the booking procedures" or the acquisition of Achana's fingerprints and immigration file (the "A-File"). The court concluded "there is no evidence to suggest that . . . the purpose" of booking Achana was to obtain his fingerprints. It thus refused to suppress Achana's fingerprints or A-File.

On February 19, 2013, Achana conditionally pled guilty to the sole count in the indictment. He reserved the right to appeal the district court's order on the motion to

Distribute in the Third District Juvenile Court of Salt Lake County, Utah.

suppress. The district court sentenced Achana to thirty-six months' imprisonment, followed by three years of supervised release. He was also sentenced to four months' imprisonment, to be served consecutive to his thirty-six month sentence, for violation of his previous supervised release.

## II

Achana contends that his fingerprints and A-File should have been suppressed. The parties agree that our analysis is governed by United States v. Olivares-Rangel, 458 F.3d 1104 (10th Cir. 2006).[3] Olivares-Rangel, like the present matter, involved a prosecution pursuant to 8 U.S.C. § 1326 following an illegal seizure. Id. at 1105. We held that "ordinary Fourth Amendment exclusionary rule analysis [applies] to determine the admissibility" of identity-related evidence such as fingerprints or an A-File. Id. at 1121. This evidence must be suppressed if an individual's illegal arrest was exploited—even in part—for investigatory purposes, but is not suppressed if it was obtained through routine booking procedures without an investigatory motive. Id. at 1115-16, 1120.

"In assessing a denial of a motion to suppress, this court accepts the factual

---

[3] Olivares-Rangel addressed a statement in INS v. Lopez-Mendoza, 468 U.S. 1032 (1984), that "has bedeviled and divided" our sibling circuits. United States v. Oscar-Torres, 507 F.3d 224, 228 (4th Cir. 2007); see Lopez-Mendoza, 468 U.S. at 1039 ("The 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred."). We determined that the statement "applies only to cases in which the defendant challenges the jurisdiction of the court over him or her based upon the unconstitutional arrest, not to cases in which the defendant only challenges the admissibility of the identity-related evidence." Olivares-Rangel, 458 F.3d at 1111.

findings of the district court, and its determination of witness credibility, unless they are clearly erroneous." United States v. Chavez, 534 F.3d 1338, 1343 (10th Cir. 2008) (quotation and alteration omitted). Evidence is reviewed in the light most favorable to the government. Id. Legal conclusions, however, are reviewed de novo. United States v. Pettigrew, 468 F.3d 626, 633 (10th Cir. 2006). Although "the burden is on the defendant to prove that the challenged search was illegal under the Fourth Amendment," United States v. Cooper, 654 F.3d 1104, 1124 (10th Cir. 2011) (quotation omitted), once the defendant shows that the Fourth Amendment was violated and the contested evidence was discovered by means of that illegality, the government bears the burden to "prove that the evidence sought to be suppressed is not 'fruit of the poisonous tree,'" United States v. Nava-Ramirez, 210 F.3d 1128, 1131 (10th Cir. 2000).

In the present matter, the government does not challenge the district court's conclusion that Achana's Fourth Amendment rights were violated or that there was a factual nexus between the constitutional violation and the fingerprints and A-File.[4] Thus,

---

[4] Although the government does not contest the determination that the extension of Achana's detention violated his Fourth Amendment rights, it suggests that his arrest was legal because officers had probable cause to believe that Achana was not lawfully present in the United States. Achana's admissions about his immigration status, however, were made during his unlawful detention (as demonstrated by the court's order suppressing them) and thus cannot form the basis for a lawful arrest. See Olivares-Rangel, 458 F.3d at 1108-09 (discussing suppression of "evidence discovered as a direct result of the unlawful activity"); United States v. Finnigin, 113 F.3d 1182, 1185 (10th Cir. 1997) (illegally obtained statements "may not be used as a basis for probable cause"). As explained below, the government's argument that the basis for Achana's arrest

Continued . . .

-6-

it is the government's burden to demonstrate that the evidence was not "fruit of the poisonous tree." Nava-Ramirez, 210 F.3d at 1131.

Because we review the district court's factual findings, including the finding that Achana was fingerprinted for routine booking purposes, for clear error, the government contends that the district court's decision should be affirmed. Under the clear error standard, "[w]e will reverse the district court's finding only if it is without factual support in the record or if, after reviewing all the evidence, we are left with a definite and firm conviction that a mistake has been made." United States v. Madrid, 713 F.3d 1251, 1256-57 (10th Cir. 2013) (quotation omitted). In the instant case, the district court recognized the lack of evidence regarding booking procedures and the acquisition of Achana's fingerprints and A-File. It said that "[t]here is no evidence about fingerprints or anything else of that nature." We are unable to conclude that the government's complete failure to meet its burden can support a finding in its favor.[5] See United States v. Guevara-Martinez, 262 F.3d 751, 753 (8th Cir. 2001).

The government also argues that Achana's admission—during his illegal

demonstrates the legitimate motive of the arresting agent also fails to persuade us that the evidence at issue is admissible.

[5] Achana, in his opening brief, also attempts to "preserve[] for further review" a challenge to the appropriateness of the subjective portion of the Olivares-Rangel inquiry. See Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2080 (2011) ("Fourth Amendment reasonableness is predominantly an objective inquiry." (quotation omitted)). We are, of course, bound by our precedent, see United States v. Morris, 247 F.3d 1080, 1085 (10th Cir. 2001), but the government's complete lack of evidence would also fail any inquiry under which we would view the circumstances objectively, see al-Kidd, 131 S. Ct. at 2080.

detention—that he did not enter the country in a legal manner somehow demonstrates that his fingerprinting was not pretextual. This argument, however, is foreclosed by our precedent. In Olivares-Rangel, the defendant allegedly "admitted he was a Mexican citizen and in the United States illegally" before he was arrested, 458 F.3d at 1106, and we nonetheless remanded the case for an evidentiary hearing concerning "whether the illegal arrest was purposefully exploited for the objective of obtaining Defendant's fingerprints." Id. at 1116. Such an admission following an illegal seizure thus cannot be sufficient to prove that the defendant was not fingerprinted for an investigatory purpose. Moreover, the alternative would condone widespread unconstitutional conduct as long as, pursuant to such conduct, the government obtained an admission that a suspect was in the United States illegally.

Finally, the government argues that we should apply the inevitable discovery doctrine. For evidence to be admissible pursuant to this doctrine, however, the "government bears the burden of proving by a preponderance of the evidence that the evidence would have been discovered without the Fourth Amendment violation." United States v. Christy, 739 F.3d 534, 540 (10th Cir. 2014). Again, the government cannot carry its burden where there is no evidence to support its position.[6]

---

[6] We are unconvinced by the government's arguments to the contrary. It is true that, pursuant to the inevitable discovery doctrine, we affirmed a district court's denial of a motion to suppress in United States v. White, 326 F.3d 1135 (10th Cir. 2003), even though the district court noted that "[n]o testimony was offered" concerning "protocol, if any, in such a situation," id. at 1138. Nonetheless, there were "demonstrated historical

Continued . . .

-8-

## III

In <u>Olivares-Rangel</u> and <u>United States v. Pena-Montes</u>, 589 F.3d 1048 (10th Cir. 2009), which presented similar questions, we remanded to the district court for further fact-finding. <u>Pena-Montes</u>, 589 F.3d at 1058; <u>Olivares-Rangel</u>, 458 F.3d at 1106. <u>Olivares-Rangel</u>, however, is now well-established precedent, and it is also well-established that the government bears the burden of proving that illegally obtained evidence is admissible, <u>see, e.g.</u>, <u>United States v. Torres-Castro</u>, 470 F.3d 992, 999 (10th Cir. 2006). Despite Achana's references to <u>Olivares-Rangel</u> in his motion to suppress and arguments in the government's response that reflected its familiarity with the <u>Olivares-Rangel</u> standard, the government made no effort to introduce the evidence required by our precedent. We do "not invite an open season for the government to make the record that it failed to make in the first instance." <u>United States v. Forsythe</u>, 437 F.3d 960, 963-64 (10th Cir. 2005); <u>see also</u> <u>United States v. De La Cruz</u>, 703 F.3d 1193, 1201 (10th Cir. 2013) (reversing denial of motion to suppress illegally obtained identification card and "the information . . . learned as a result of that identification card"). Achana's fingerprints and A-File must be suppressed.

## IV

For the foregoing reasons, we **REVERSE** the district court's decision to the extent that it denied Achana's suppression motion and **REMAND** the case to the district court

facts in the record" to "establish that the government met" its burden in <u>White</u>. <u>Id.</u> In the present matter, there is no such evidence.

-9-

with instructions to **VACATE** its judgment and sentence and to conduct further proceedings consistent with this order. The mandate shall issue forthwith.

Entered for the Court

Carlos F. Lucero
Circuit Judge