FILED
United States Court of Appeals
Tenth Circuit

June 20, 2017

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

MARY ANNE SAUSE,

    Plaintiff - Appellant,

v.

TIMOTHY J. BAUER, Chief of Police;
JASON LINDSEY, Police Officer of
Louisburg, Kansas; BRENT BALL, Police
Officer of Louisburg, Kansas; RON
ANDERSON, Former Chief of Police of
Louisburg, Kansas; LEE STEVENS,
Former Louisburg, Kansas Police Officer;
MARTY SOUTHARD, Mayor of City of
Louisburg, Kansas; TRAVIS
THOMPSON, Former Mayor of City of
Louisburg, Kansas,

    Defendants - Appellees.

No. 16-3231

_____

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 2:15-CV-09633-JAR-TJJ)**
_____

Bradley G. Hubbard, Gibson, Dunn & Crutcher LLP, Dallas, Texas (James C. Ho,
Gibson Dunn & Crutcher LLP, Dallas, Texas, Hiram S. Sasser III, Justin E. Butterfield
and Stephanie N. Phillips, First Liberty Institute, Plano, Texas, and Jason Neal, Gibson,
Dunn & Crutcher LLP, Washington, D.C., with him on the briefs), for Plaintiff-
Appellant.

Christopher B. Nelson, Fisher, Patterson, Sayler & Smith, LLP, Overland Park, Kansas
(Michael K. Seck and Amy J. Luck, Fisher, Patterson, Sayler & Smith, LLP, Overland
Park, Kansas, on the brief), for Defendants-Appellees.

_____

Before **TYMKOVICH**, Chief Judge, **LUCERO** and **MORITZ**, Circuit Judges.

_____

**MORITZ**, Circuit Judge.

_____

Mary Anne Sause brought this action under 42 U.S.C. § 1983, alleging that Officers Lee Stevens and Jason Lindsey (the defendants) violated her rights under the First Amendment. The district court dismissed Sause's complaint with prejudice for failure to state a claim, *see* Fed. R. Civ. P. 12(b)(6), and Sause appeals.

Because Sause fails to demonstrate that the contours of the right at issue are clearly established, we agree with the district court that the defendants are entitled to qualified immunity. And we likewise agree that allowing Sause leave to amend her complaint would be futile. Accordingly, we affirm the district court's order to the extent that it dismisses with prejudice Sause's claims for money damages. But because we conclude that Sause lacks standing to assert her claims for injunctive relief, we reverse in part and remand with instructions to dismiss those claims without prejudice.

**I**

We derive the following facts from Sause's pro se complaint, construing her allegations liberally and in the light most favorable to her. *See Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991) ("A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff."); *id.* at 1110 ("A pro se litigant's pleadings are to be

2

construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers.").

On November 22, 2013, the defendants contacted Sause at her home while investigating a noise complaint. At first, Sause denied the defendants entry "[f]or [her] protection" because she couldn't see through her peephole to determine who was at her door. App. 14. But when the defendants later returned, Sause let them in.

"[A]ppearing angry," the defendants asked Sause why she didn't answer her door the first time. *Id.* at 12. Sause responded by showing them a copy of the Constitution and Bill of Rights that she keeps "on display" by her front door. *Id.* at 13. Lindsey "laugh[ed]" and "mock[ed]" Sause, saying, "[T]hat's nothing, it's just a piece of paper" that "[d]oesn't work here." *Id.* Lindsey also turned on his body camera and told Sause that she was "going to be on" the television show "COPS." *Id.*

At some point, Stevens left Lindsey alone with Sause and her friend Sharon Johnson, who was also present. Lindsey then informed Sause that she "was going to jail," although he "d[idn't] know [why] yet." *Id.* Understandably frightened, Sause asked Lindsey if she could pray. Lindsey replied, "Yes," and Sause "knelt down on . . . [her] prayer rug." *Id.*

While Sause was still praying, Stevens returned and asked what she was doing. Lindsey laughed and told Stevens "in a mocking tone" that Sause was praying. *Id.* Stevens then ordered Sause to "[g]et up" and "[t]o [s]top praying." *Id.* at 13-14.

Sause's complaint doesn't explicitly state that she complied with Stevens' orders, but it appears she at least stopped praying; when Lindsey told her that she

3

"need[ed] to move back" to Missouri, Sause responded, "Why?" *Id.* at 14. Lindsey

then explained to Sause that Sause's apartment manager told him that "no one likes"

Sause. *Id.*

Next, the defendants started "looking through [their] booklet" for something to

charge Sause with. *Id.* "Lindsey would point" at something in the book, and Stevens

"would shake [his] head." *Id.* Eventually, the defendants cited Sause for disorderly

conduct and interfering with law enforcement, based at least in part on Sause's

failure to answer the door the first time the defendants "came out." *Id.* The

defendants then asked to see Sause's tattoos and scars. Sause explained several times

that she had previously "had a double mastectomy" and eventually "raised [her] shirt

up" and showed the defendants her scars "because they kept asking." *Id.* "That

appeared to disgust" the defendants. *Id.* And it "humiliat[ed]" Sause. *Id.*

Two years later, Sause filed suit under § 1983, alleging that the defendants

violated her First Amendment rights.[1] The defendants moved to dismiss with

prejudice, arguing that Sause's complaint fails to state a claim upon which relief can

be granted and that they're entitled to qualified immunity. In response, Sause moved

to amend her complaint. Citing a local rule, the district court denied Sause's motion

because Sause failed to attach to it a proposed amended complaint. The court

explained that it wasn't foreclosing "any future motion to amend that attaches a

proposed amended complaint and complies with all applicable [rules]." *Id.* at 62-63.

---

[1] Sause also brought other claims and named other defendants. But on appeal, she addresses only her First Amendment claims against Lindsey and Stevens. We therefore confine our analysis to those claims.

But when Sause failed to file another motion to amend, the district court granted the defendants' motion to dismiss with prejudice. In doing so, the court reasoned that while Stevens "may have offended" Sause by ordering her to stop praying, he didn't "burden . . . her ability to exercise her religion." *Id.* at 71. Accordingly, the district court concluded that Sause's complaint fails to allege "a plausible First Amendment claim against" Stevens; ruled that Stevens is entitled to qualified immunity; and dismissed Sause's First Amendment claim against him.[2] *Id.* And because the court concluded that granting Sause leave to amend would be futile, it dismissed Sause's complaint with prejudice. Sause appeals.

## II

Sause advances three general arguments on appeal. First, she argues that the defendants aren't entitled to qualified immunity because they violated her clearly established rights under the First Amendment. Second, she argues that even assuming the defendants are entitled to qualified immunity because the contours of that right aren't clearly established, the doctrine of qualified immunity doesn't shield them from her claims for injunctive relief. Third, Sause argues that even if dismissal under Rule 12(b)(6) was appropriate, the district court should have dismissed her complaint without prejudice and given her leave to amend.

---

[2] The district court didn't separately address whether Lindsey violated Sause's First Amendment rights, apparently because it didn't construe her complaint as asserting such a claim against Lindsey.

## A

We review de novo the district court's decision to dismiss Sause's claims on the basis of qualified immunity. *Columbian Fin. Corp. v. Stork*, 811 F.3d 390, 396 (10th Cir. 2016). To defeat the defendants' assertion of qualified immunity at the motion-to-dismiss stage, Sause "must allege sufficient facts that show—when taken as true—the defendant[s] plausibly violated h[er] constitutional rights, which were clearly established at the time of violation." *Schwartz v. Booker*, 702 F.3d 573, 579 (10th Cir. 2012).

We assume that Sause can satisfy the first prong of this inquiry. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (explaining that we have discretion to address second prong first "in light of the circumstances in the particular case at hand"). That is, we assume that the defendants violated Sause's rights under the First Amendment when, according to Sause, they repeatedly mocked her, ordered her to stop praying so they could harass her, threatened her with arrest and public humiliation, insisted that she show them the scars from her double mastectomy, and then "appeared . . . disgust[ed]" when she complied—"all over" a mere noise complaint. App. 14, 17.

But this assumption doesn't entitle Sause to relief. Instead, Sause must demonstrate that any reasonable officer would have known this behavior violated the First Amendment. *See Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011) (explaining that right isn't clearly established unless every reasonable officer would know that conduct at issue violates that right). Sause argues she can make this showing because it was clearly established that she had a "right to pray in the privacy of [her] home free from governmental interference," at least in the absence of "any legitimate law enforcement

interest." Aplt. Br. 15, 47. Alternatively, she asserts, "[t]he right to be free from official retaliation for exercising one's First Amendment rights [was] also clearly established." *Id.* at 48.

We don't disagree with Sause's articulation of these general rights. But the Supreme Court has repeatedly and consistently warned us "not to define clearly established law at [this] high level of generality." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *al–Kidd*, 563 U.S. at 742). Instead, "[t]he dispositive question is 'whether the violative nature of [the defendants'] *particular conduct* is clearly established.'" *Id.* (quoting *al–Kidd*, 563 U.S. at 742). In other words, "the clearly established law must be 'particularized' to the facts of the case." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)); *see id.* (suggesting that law isn't clearly established unless court can "identify a case where an officer acting under similar circumstances as [defendant] was held to have violated" relevant constitutional right). Thus, before we may declare the law to be clearly established, we generally require (1) "a Supreme Court or Tenth Circuit decision on point," or (2) a showing that "the clearly established weight of authority from other courts [has] found the law to be as the plaintiff maintains." *Fancher v. Barrientos*, 723 F.3d 1191, 1201 (10th Cir. 2013) (quoting *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007)).

Here, Sause doesn't identify a single case in which this court, or any other court for that matter, has found a First Amendment violation based on a factual scenario even remotely resembling the one we encounter here—i.e., a scenario in which (1) officers

7

involved in a legitimate investigation obtain consent to enter a private residence and (2) while there, ultimately cite an individual for violating the law but (3) in the interim, interrupt their investigation to order the individual to stop engaging in religiously-motivated conduct so that they can (4) briefly harass her before (5) issuing a citation. In other words, "this case presents a unique set of facts and circumstances." *White*, 137 S. Ct. at 552 (quoting *Pauly v. White*, 814 F.3d 1060, 1077 (10th Cir. 2016), *cert. granted and judgment vacated*, 137 S. Ct. 548 (2017)). And "[t]his alone" provides "an important indication . . . that [the defendants'] conduct did not violate a 'clearly established' right." *Id.*

Of course, the Supreme Court has said that "'general statements of the law are not inherently incapable of giving fair and clear warning' to officers." *White*, 137 S. Ct. at 552 (quoting *United States v. Lanier*, 520 U.S. 259, 271 (1997)). And we recognize that Sause need not identify "a case *directly* on point" to show that the law is clearly established. *al–Kidd*, 563 U.S. at 741 (emphasis added). "After all, some things are so obviously unlawful that they don't require detailed explanation and sometimes the most obviously unlawful things happen so rarely that a case on point is itself an unusual thing." *Browder v. City of Albuquerque*, 787 F.3d 1076, 1082 (10th Cir. 2015).

But while the conduct alleged in this case may be obviously unprofessional, we can't say that it's "obviously unlawful." *Id.* It certainly wouldn't be obvious to a reasonable officer that, in the midst of a legitimate investigation, the First Amendment would prohibit him or her from ordering the subject of that investigation to stand up and direct his or her attention to the officer—even if the subject of the investigation is

8

involved in religiously-motivated conduct at the time, and even if what the officers say or do immediately after issuing that command does nothing to further their investigation.

In other words, this isn't a case where the defendants' conduct is so "obviously egregious . . . in light of prevailing constitutional principles" that "less specificity is required from prior case law to clearly establish the violation." *Fogarty v. Gallegos*, 523 F.3d 1147, 1161 (10th Cir. 2008) (quoting *Casey*, 509 F.3d at 1284).[3] Instead, Sause can only satisfy the clearly-established prong by citing a case or cases that make clear "the violative nature of [the defendants'] *particular* conduct." *Mullenix*, 136 S. Ct. at 308 (quoting *al–Kidd*, 563 U.S. at 742). And because Sause fails to identify—and our independent research fails to yield—any such authority, we conclude that the law isn't clearly established. Accordingly, we agree with the district court that Stevens is entitled to qualified immunity.[4]

Our conclusion that Stevens is entitled to qualified immunity also resolves Sause's next argument: that the district court erred in construing her complaint to allege a First Amendment claim against Stevens alone, rather than alleging claims against both Stevens and Lindsey. Even if we assume that Sause's complaint alleges a First Amendment claim against Lindsey, the district court's failure to recognize as much was harmless. In the

---

[3] We have recently questioned *Casey*'s "sliding-scale approach." *Aldaba v. Pickens*, 844 F.3d 870, 874 n.1 (10th Cir. 2016). But we need not address its continuing validity here; even assuming it survives the Court's decision in *Mullenix*, 136 S. Ct. 305, it doesn't help Sause.

[4] The district court didn't reach the clearly-established prong because it found there was no constitutional violation. But we "may affirm on any basis supported by the record, even if it requires ruling on arguments not reached by the district court." *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1130 (10th Cir. 2011).

absence of any authority that "place[s] the . . . constitutional question beyond debate," Lindsey is, like Stevens, entitled to qualified immunity. *al–Kidd*, 563 U.S. at 741.

**B**

Alternatively, Sause argues that even if she fails to satisfy the clearly-established prong and the defendants are therefore entitled to qualified immunity, the district court nevertheless erred in dismissing her complaint because it asserts plausible claims for injunctive relief. *See Jones v. City & Cty. of Denver*, 854 F.2d 1206, 1208 n.2 (10th Cir. 1988) (explaining that because doctrine of qualified immunity doesn't protect officials from claims for injunctive relief, "defendants must proceed to trial" on such claims, "even if qualified immunity protects them from suit on the question of liability for money damages").

For purposes of this argument, we again assume that Sause's complaint adequately pleads a constitutional violation. And we agree with Sause that her pro se complaint demonstrates an intent to seek injunctive relief for that violation. Specifically, Sause asserts that "[n]o money" can adequately compensate her for the alleged violation of her constitutional rights. App. 16. Moreover, Sause's complaint indicates that "the wrongs alleged . . . are continuing to occur at the present time." *Id.* Finally, Sause asserts that Lindsey "[t]hreatened [her] again" sometime in March 2015 and "[l]ectured" her that "'[f]reedom of [s]peech' means nothing." *Id.* at 17.

But while these allegations are sufficient to establish that Sause is attempting to assert claims for injunctive relief, they're insufficient to establish that she has standing to

10

maintain such claims.[5] That's because a plaintiff lacks standing to "maintain a declaratory or injunctive action unless he or she can demonstrate a good chance of being likewise injured in the future." *Barney v. Pulsipher*, 143 F.3d 1299, 1306 n.3 (10th Cir. 1998) (quoting *Facio v. Jones*, 929 F.2d 541, 544 (10th Cir. 1991)); *see City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) ("[P]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . ." (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495 (1974))).

In *Lyons*, the plaintiff "filed a complaint for damages, injunction, and declaratory relief" based on law enforcement's use, during a routine traffic stop, of a chokehold that left him unconscious and damaged his larynx. 461 U.S. at 97-98. The Supreme Court agreed that these allegations were sufficient to demonstrate that the plaintiff "may have been illegally choked by the police" on a single occasion, and thus "presumably [had] standing to claim damages." *Id.* at 105.

But the Court said that those same allegations "d[id] nothing to establish a real and immediate threat" that the plaintiff would again suffer a similar injury in the near future—i.e., "that he would again be stopped for a traffic violation, or for any other offense, by an officer or officers who would illegally choke him into unconsciousness without any provocation or resistance on his part." *Id.* And because there was no indication that the plaintiff "faced a real and immediate threat of again being illegally

---

[5] Although the district court didn't address Sause's standing to seek injunctive relief and the defendants don't challenge her standing to do so on appeal, we have an independent obligation to address the issue. *See Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1126 (10th Cir. 2013) ("[W]henever standing is unclear, [this court] must consider it *sua sponte* to ensure there is an Article III case or controversy before [it].").

choked," the Court reasoned, the plaintiff "failed to demonstrate a case or controversy . . . that would justify the equitable relief sought." *Id.* at 105, 110. Accordingly, the Court concluded, "the [d]istrict [c]ourt was quite right in dismissing" the plaintiff's claim for injunctive relief. *Id.* at 98, 110.

So too here, where Sause indicates in her complaint only that "the wrongs alleged" there "continu[e] to occur." App. 16. This general allegation is "vague and completely lacking in specificity," *Ledbetter v. City of Topeka*, 318 F.3d 1183, 1188 (10th Cir. 2003) (quoting *Ledbetter v. City of Topeka*, No. 00-1153-DES, 2001 WL 80060, at *2 (D. Kan. Jan. 23, 2001), *aff'd*, 318 F.3d 1183 (10th Cir. 2003)))—especially in light of the numerous and varied "wrongs" Sause alleges in her 14-page complaint, App. 16.

The only specific allegations Sause makes to that effect are her assertions that Lindsey "[t]hreatened [her] again" sometime in March 2015 and "[l]ectured" her that "'[f]reedom of [s]peech' means nothing." App. 15-17. These allegations are insufficient to demonstrate that Sause faces "a good chance of being likewise injured in the future." *Barney*, 143 F.3d at 1306 n.3 (quoting *Facio*, 929 F.2d at 544). That is, Sause fails to establish she "face[s] a real and immediate threat" that (1) the defendants will again enter her home while investigating a crime; (2) she will again kneel and pray; and (3) the defendants will again order her to stand up and stop praying so they can harass her. *Lyons*, 461 U.S. at 105; *see Barney*, 143 F.3d at 1306 & n.3 (holding that plaintiffs lacked standing to seek injunctive relief because they failed to demonstrate any likelihood that they would "end up" back in jail where alleged constitutional violations occurred).

12

True, Sause's complaint indicates she continues to "fear[] [t]o [t]his [d]ay" that she will have a similar encounter with the defendants sometime in the future. App. 17. But it's "the *reality* of the threat of repeated injury that is relevant to the standing inquiry, not the plaintiff's subjective apprehensions." *Lyons*, 461 U.S. at 107 n.8. Thus, "[t]he emotional consequences" of the acts Sause alleges in her complaint "simply are not a sufficient basis for an injunction absent a real and immediate threat of future injury by the defendant[s]." *Id.* Accordingly, Sause's subjective fears, however genuine, are insufficient to establish standing.

In short, we agree with Sause that qualified immunity doesn't shield the defendants against her claims for injunctive relief. But because Sause lacks standing to maintain those claims, the district court was "quite right" to dismiss them. *Lyons*, 461 U.S. at 110. Nevertheless, Sause's lack of standing deprived the district court of subject matter jurisdiction to reach the merits of her claims for injunctive relief. Accordingly, we remand to the district court with directions to dismiss those claims without prejudice. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006).

## C

Finally, even assuming dismissal was appropriate, Sause argues that the district court abused its discretion in concluding that it would be futile to grant Sause leave to amend and in dismissing Sause's claims with prejudice on that basis. *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) ("[O]rdinarily the dismissal of a pro se claim under Rule 12(b)(6) should be without prejudice, and a careful judge will

13

explain the pleading's deficiencies so that a prisoner with a meritorious claim can then submit an adequate complaint." (internal citations omitted)).

In support of this argument, Sause asserts that her "complaint states a plausible claim," Aplt. Br. 53, or at the very least, that her "factual allegations are close to stating" one, *id.* at 53-54 (quoting *Gee*, 627 F.3d at 1195).

We don't necessarily disagree. Indeed, for purposes of resolving this appeal, we assume that the defendants violated Sause's First Amendment rights. But even with the benefit of that assumption, the defendants are nevertheless entitled to qualified immunity because Sause fails to identify a case that "place[s] the . . . constitutional question beyond debate." *al–Kidd*, 563 U.S. at 741. And because Sause makes no effort to explain how she might amend her complaint to overcome this legal hurdle, she fails to demonstrate that the district court abused its discretion in dismissing her claims for monetary relief with prejudice. *Cf. Gee*, 627 F.3d at 1195 (affirming dismissal with prejudice where claims were "barred by preclusion or the statute of limitations" because "amending those claims would be futile").

\* \* \*

To the extent that Sause's complaint seeks monetary relief, we agree that the defendants are entitled to qualified immunity and that providing Sause an opportunity to amend her complaint would be futile. Accordingly, we affirm the district court's order to the extent that it dismisses with prejudice Sause's claims for money damages. To the extent that Sause's complaint instead seeks injunctive relief, we likewise conclude that the district court properly dismissed her claims. But because we conclude that Sause's

14

lack of standing deprived the district court of subject matter jurisdiction, we remand with

directions to dismiss her claims for injunctive relief without prejudice.

16-3231, *Sause v. Bauer*

**TYMKOVICH**, C.J., concurring.

I fully join in Judge Moritz's opinion and agree that the officers' conduct here did not violate clearly established First Amendment precedent. I write separately to emphasize that Ms. Sause's allegations fit more neatly in the Fourth Amendment context. And, I must add, either the officers here acted with extraordinary contempt of a law abiding citizen and they should be condemned, or, if Ms. Sause's allegations are untrue, she has done the officers a grave injustice by manufacturing such reprehensible conduct.

It is axiomatic that an initially justified police encounter may nonetheless evolve into an unconstitutional seizure if, for example, the encounter is prolonged beyond the time reasonably required to complete the legitimate police objective justifying the encounter, or if the officers' actions are not reasonably related in

scope to that legitimate objective.[1]  If we believe Ms. Sause's allegations, this sort of devolution is what happened here.

The parties agree that Officers Lindsey and Stevens arrived at Ms. Sause's home while investigating a noise complaint.  But although the officers' initial motives may have been legitimate, Ms. Sause's complaint indicates the situation quickly devolved.  According to the complaint, the officers were more preoccupied with harassing Ms. Sause than with conducting a legitimate police investigation.  For example, while the complaint does not allege that the officers questioned Sause about the alleged noise complaint or their attendant investigation, Ms. Sause does allege that the officers:

---

[1]  *See, e.g.*, *Illinois v. Caballes*, 543 U.S. 405, 407 (2005) ("It is [ ] clear that a seizure that is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution.  A seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission."); *Hiibel v. Sixth Judicial Dist. Court of Nevada, Humboldt Cty.*, 542 U.S. 177, 185 (2004) ("To ensure that the resulting seizure is constitutionally reasonable, a *Terry* stop must be limited.  The officer's action must be 'justified at its inception and reasonably related in scope to the circumstances which justified the interference in the first place.'" (citation omitted; alteration incorporated)).  *See also, e.g.*, *United States v. Tubens*, 765 F.3d 1251, 1254 (10th Cir. 2014) ("[E]ven assuming, as the district court did, that the officers' investigation of Tubens escalated from a consensual encounter, . . . the officers' investigation [must be] both 'justified at its inception' and 'reasonably related in scope to the circumstances which justified the interference in the first place.'" (citations omitted)); *United States v. De La Cruz*, 703 F.3d 1193, 1197 (10th Cir. 2013) (acknowledging that there may come a point during a police encounter at which any initial justification has "vanished" and, beyond that point, "[e]ven a very brief extension of the detention without consent or reasonable suspicion violates the Fourth Amendment" (citation omitted)).

(1) told her the Constitution and Bill of Rights were "nothing, [ ] just a piece of paper" that "[d]oesn't work here," App. 13;

(2) threatened that their encounter was "going to be on 'COPs'" (a television show), *id.*;

(3) told her to "get ready" because she was "going to jail," and, although they did not yet know why she would be going to jail, that her bond would be $2,000, *id.*;

(4) demanded that she "[g]et up" and "[s]top praying" only to tell her that she "need[ed] to move from here," "to move back where [she] came from . . . because no one like[d] [her] here," *id.* at 14;

(5) flipped through a booklet, seemingly searching for a violation with which to charge Ms. Sause, *see id.*, suggesting they were not going to proceed with charges for any alleged noise violation;

(6) issued Ms. Sause tickets for "Interference with Law Enforcement" and "Disorderly Conduct," allegedly for not answering her door when the officers first approached, *id.*; and

(7) repeatedly (*i.e.*, three or four times) asked Ms. Sause to show them any tattoos or scars she had, including scars on her chest from a double mastectomy, *id.*

If true, Ms. Sause's allegations are inconsistent with any legitimate law enforcement purpose capable of justifying a continuing police intrusion in her

3

home. The officers deny the alleged conduct, although we assume for purposes of a motion to dismiss that the allegations are true. And we do not know whether the district court would find a constitutional violation in these circumstances or, if so, whether any violation would be clearly established.

But Ms. Sause did not make a Fourth Amendment claim on appeal and has only appealed the First Amendment cause of action. I agree First Amendment law is not clearly established for the reasons articulated by Judge Moritz in her well-written opinion.

4